In Re: Condemnation by the Commonwealth of Pennsylvania, Department of Environmental Resources of 17.9 Acres of Land Situate in the Borough of Canonsburg, Washington, County, Pennsylvania. Canon Development Company, Inc. et al., Commonwealth of Pennsylvania, Department of Environmental Resources, Appellant.

Argued March 13, 1985, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Michael J. Creighton,* Assistant Counsel, with him, *Douglas R. Blazey,* Chief Counsel, DER, and *Jay C. Waldman,* General Counsel, for appellant.

*John C. Pettit, Patrono, Ceisler, Edwards & Pettit,* for appellee, Canon Development Co., Inc.

OPINION BY JUDGE MACPHAIL, August 27, 1985:

The Commonwealth of Pennsylvania, Department of Environmental Resources (DER) appeals here from an order of the Court of Common Pleas of Washington County which sustained the preliminary objections of Canon Development Company, Inc. (Canon) to DER's declaration of taking.

Canon owned certain property which DER sought to condemn pursuant to Section 1301 of The Atomic Energy Development and Radiation Control Act (Atomic Energy Act), Act of January 28, 1966, P.L. (1965) 1625, *as amended,* 73 P.S. §§1001-1501, repealed by the Act of July 10, 1984, P.L. 688.[1]   DER filed a

---

[1] A similar provision is now found in the Radiation Protection Act, Act of July 10, 1984, P.L. 688, 35 P.S. §§7110.101-7110.703. DER was the agency responsible for policing the Atomic Energy Development and Radiation Control Act.   Section 510-1(17) of The Administrative Code of 1929 (Code), Act of April 9, 1929, P.L. 177, *as amended,* added by 1901-A, the Act of December 3, 1970, P.L. 834, *as amended,* 71 P.S. §510-1(17).

declaration of taking on February 10, 1982, to condemn Canon's property which contained certain residual radioactive materials and which required remedial action. Canon filed preliminary objections to the declaration of taking and alleged that a de facto taking[2] had occurred on or about August 23, 1977, the date the Secretary of DER notified Canon by letter of soil contamination findings at Canon's site.[3] After a de novo hearing, the trial court sustained Canon's preliminary objections and held that a de facto taking had occurred on or about August 23, 1977, and the instant appeal followed.

Our scope of review is limited to a determination of whether the court abused its discretion or committed an error of law when it sustained Canon's preliminary objections. *Sepko Appeal,* 84 Pa. Commonwealth Ct. 359, 479 A.2d 665 (1984). There is no dispute between the parties that a taking did occur; disposition of this appeal turns on the determination of whether the taking occurred by the August 23, 1977 letter (August letter) or by the declaration of taking filed February 10, 1982. The trial court held that because DER reported to the community that the subject land was contaminated with radiation and instructed Canon to take certain steps restricting the

---

[2] A de facto taking occurs when an entity clothed with the power of eminent domain substantially deprives an owner of the use and enjoyment of his property. *Conroy-Prugh Glass Co. v. Commonwealth,* 456 Pa. 384, 321 A.2d 598 (1974). A property owner alleging a de facto taking bears a heavy burden of proof: "[h]e must show that exceptional circumstances exist which substantially deprive him of the use of his property and that the deprivation is the direct and necessary consequence of the actions of the entity having the eminent domain power." *McCracken v. City of Philadelphia,* 69 Pa. Commonwealth Ct. 492, 494, 451 A.2d 1046, 1048 (1982).

[3] Canon alleges that the de facto taking occurred August 23, 1977 and the trial court's amended order held that that was the date of condemnation.

use of its land as a result of which at least one tenant was forced out, a de facto condemnation occurred in 1977.

DER first argues that it had no power of eminent domain in 1977, taking the position that such power was not vested in DER until the Act of July 2, 1980, P.L. 345 amended The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, 71 P.S. §§51-732, by adding §1904-A.1(2), 71 P.S. §510-4.1(2). As we have noted, one of the requisites of a de facto taking is that the condemnor must be an entity clothed with the power of eminent domain. DER's next argument is that Canon is somehow precluded from proceeding in an eminent domain case because it failed to exhaust its administrative remedies. DER's third contention is that the August letter was a permissible exercise of its police power, not an exercise of its power of eminent domain. The last issue raised is whether Canon sustained its heavy burden of proving a de facto taking.

Because we believe the trial court correctly resolved the first two issues against DER, we will limit ourselves to a discussion of the legal effect of the August letter.

In summary, the letter advises Canon that substantial quantities of radioactive material were located beneath the surface of its property and directs Canon to apply for a Radioactive Material License or other written approval by DER before excavation of any kind is performed.[4] The letter also directs Canon to restrict access to a portion of the property identified as Parcel C (which was undeveloped) by "repairing or replacing the existing fence, by closing all openings

---

[4] By letter dated August 24, 1979, Canon requested approval to drill an oil or gas well on its property. DER denied the request on September 7, 1979. Canon did not appeal this decision.

in the fence, and by posting 'no trespassing' signs on the fence at distances of no less than 50 feet apart. Sufficient surveillance of the area shall be maintained to provide reasonable assurance that no access is permitted.'' The letter closes by saying that DER would be happy to discuss the issue with Canon and states that DER is continuing its own discussions with the U.S. Energy Research and Development Administration (ERDA).

DER's letter was a follow-up to a publication issued to the media by ERDA in May of 1977. That press release *by ERDA* indicated that Canon's property was contaminated in the early 1900's and continued through the 1940's when Canon's predecessors in title used the site to extract radium and uranium from raw ore. As we have noted, DER vigorously argues that its letter was a proper exercise of its police power and did not vest any right in Canon to damages for an unlawful taking.

In Pennsylvania, the seminal case discussing the state's police power is *Commonwealth v. Barnes & Tucker Co.*, 472 Pa. 115, 371 A.2d 461 (1977). Our Supreme Court there held that DER's restrictive orders regarding the discharge of untreated acid mine water by the landowner were a reasonable exercise of the Commonwealth's police power and not an unconstitutional taking of private property which would entitle the landowner to compensation; this, notwithstanding the fact that the landowner was compelled by DER's orders to cease operation of one of its mines. The Court said:

> The police power is the inherent power of a body politic to enact and enforce laws for the promotion of the general welfare. 'It has long been recognized that property rights are not absolute and that persons hold their property "subject to valid police regulation, made, and to

be made, for the health and comfort of the people. . . ." ' De Paul v. Kauffman, 441 Pa. 386, 393, 272 A.2d 500, 504 (1971), quoting Nolan v. Jones, 263 Pa. 124, 131, 106 A. 235, 237 (1919). It must be recognized that one who challenges the constitutionality of the exercise of the state's police power, affecting a property interest, must overcome a heavy burden of proof to sustain that challenge. . . .

As we acknowledged in our previous consideration of this case, the classic rule of Lawton v. Steel, 152 U.S. 133, 137, 14 S.Ct. 499, 501, 38 L.Ed. 385 (1894), is instructive in determining whether there has been an unconstitutional exercise of the state's police power:

'To justify the State in . . . interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. *The legislature may not*, under the guise of protecting the public interests, *arbitrarily interfere with private business or impose unusual* and *unnecessary restrictions upon lawful occupations.*' (Emphasis added.)

. . . .

Thus, we find that restrictions or obligations imposed on the use or ownership of property to protect the public health, safety or morals from dangers threatened, if reasonably necessary to dispel the particular danger, do not constitute a taking.

472 Pa. at 123-28, 371 A.2d at 465-68 (some citations omitted; emphasis in the original).

After a careful review of the content of the August letter, we are satisfied that it was a proper exercise of state police power. Confronted by a situation of unknown risk and danger to the public by reason of conditions found to exist on Canon's property, DER, being the agency charged with oversight of such problems, properly and reasonably restricted Canon's use of its property to some degree in the interest of the welfare, health and safety of the general public. We believe that the tests set forth in *Barnes & Tucker* have been met. The public interest required interference by DER and the means utilized by DER were not unduly oppressive. In this respect, we think it is noteworthy that Canon took no action with respect to the August letter until DER, some four and one-half years later, filed its declaration of taking.

Nothing in the August letter indicates an intention of DER to confiscate Canon's real estate then or at any time in the future. While we may agree with Canon that whether or not the restrictions set forth in the letter and the attendant publicity substantially deprived Canon of the use of its property is a question of fact for the trial court,[5] whether or not the

[5] The trial court did not rely exclusively upon the August 23, 1977 letter in holding that a de facto taking had occurred, but also relied upon the preliminary publicity generated by the finding of soil contamination. Mere publicity concerning the proposed taking of property does not by itself constitute a de facto taking. *County of Allegheny v. Church of Jesus Christ*, 14 Pa. Commonwealth Ct. 510, 322 A.2d 803 (1974), but where the publicity from an inevitable condemnation directly affects the realized income of the condemnee, *Conroy-Prugh*, that publicity may deprive the condemnee of the use and enjoyment of his property and result in a finding of a de facto taking. *Petition of Cornell Industrial Electric Inc.*, 19 Pa. Commonwealth Ct. 599, 338 A.2d 752 (1975). The factual situation here does not warrant such a determination. While the record contains evidence of some publicity which may or may not have heightened public concern, the publicity was not of such character or magnitude to compel the conclusion that a de facto condemnation had occurred prior to DER's filing of the declaration of taking.

August letter constituted a de facto taking or an exercise of the state's police power is a matter of law subject to our appellate review. Our own review of the content of the letter leads us to conclude that it was a letter of instruction, the terms of which were left open for further discussion should Canon desire it. While we agree with the learned trial judge that principles of highway relocations may not be pertinent to what he described as "condemnation for radiation and carcinogenic potential", we, nevertheless, believe that the August letter is easily distinguishable from the communications involved in prior cases of this Court where a de facto taking was found to exist.

Order reversed.

### ORDER

The order of the Court of Common Pleas of Washington County, No. 104, dated May 20, 1983, is reversed.

———

CONCURRING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.:

I concur with the result reached by the majority. Indeed, I believe that the risk of harm to the public and environment emanating from Canon's property, which contains radioactive materials, compels exceptional diligence by the Commonwealth in the exercise of its police power. *See* Pa. Const. art. 1, §27. As the majority correctly points out, the Department of Environmental Resources (DER) is charged with the oversight to such problems. Regulation by DER to *prevent harm to the public* does not amount to a taking if the means are reasonably necessary to accomplish the purpose and not unduly oppressive upon individuals. *Commonwealth v. Barnes & Tucker Co.*, 472 Pa. 115, 371 A.2d 461 (1977), *appeal dismissed,*

434 U.S. 807 (1977).[1] Due to the potentially devastating long-term effects of radioactive contamination on the public's health and the value and use of nearby properties, drastic restrictions may well be considered reasonably necessary and not unduly oppressive. However, a radioactive hazard should not be deemed to give cart-blanche approval to responsive actions by the Commonwealth. Specifically, due to the particularly harsh economic impact an owner might suffer from the public revelation that such a hazard exists on his property, this Court should take special care to insure that the Commonwealth and its agencies do not engage in sensationalistic publicity beyond the information reasonably necessary to alert the public to the danger.

---

[1] In contrast, when an entity "clothed with the power of eminent domain" acts to *achieve a public purpose* (such as construction of a highway), this Court will find that a de facto taking has occurred if a property owner is "substantially deprive[d] . . . of the beneficial use and enjoyment of his property." *Conroy-Prugh Glass Co. v. Commonwealth*, 456 Pa. 384, 388, 321 A.2d 598, 599 (1974).