527 A.2d 211

Craig Rok, an individual t/d/b/a Craig Auto Service and Towing, Appellant v. Thomas E. Flaherty, individually and in his capacity as Controller of the City of Pittsburgh; Thomas Fitzgerald, individually and in his capacity as Aide to the Controller of the City of Pittsburgh; and Kevin Forsythe, individually and in his capacity as Aide to the Controller of the City of Pittsburgh, Appellees.

Argued March 25, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Karyn Ashley Rok, Rok and Baskin,* for appellant.

*David M. Neuhart*, with him, *William J. Clifford, Dickie, McCamey & Chilcote, P.C.*, for appellees.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., June 12, 1987:

Craig Rok, t/d/b/a Craig Auto Service and Towing (Rok), appeals an Allegheny County Common Pleas Court order sustaining preliminary objections in the nature of a demurrer of Pittsburgh City Controller Thomas E. Flaherty (Flaherty). The common pleas court dismissed Rok's defamation complaint, concluding that Flaherty enjoyed absolute immunity.[1] We reverse and remand.

The City of Pittsburgh advertised for bids on contracts for the procurement of towing services used by the various City departments. The Director of General Services awarded the contract to Rok. Flaherty refused to countersign. The common pleas court granted the City's peremptory judgment motion and ordered Flaherty to countersign (Order No. GD85-12952 dated August 13, 1985).

Flaherty again refused to sign and appealed, citing improper influence by the Mayor in awarding the contract. On September 10, 1985, the common pleas court revoked Flaherty's automatic supersedeas and again ordered that he sign. In *Flaherty v. City of Pittsburgh,* 100 Pa. Commonwealth Ct. 508, 515 A.2d 91 (1986), this Court affirmed, holding that the signing of the contract was a purely ministerial act of the Controller's office which Flaherty had a mandatory duty to perform. Flaherty subsequently complied.

During this political maneuvering, Rok filed a complaint, which is the subject of this appeal, against

---

[1] Flaherty's motion for more specific pleadings was sustained as to those allegations in Counts V and VI of Rok's complaint relating to the aides of the Controller and their duties. That part of the trial court's order is not affected by the opinion.

Flaherty for defamation and intentional interference with contractual relations. Flaherty raised the common law defense of absolute immunity.

Our scope of review of a common pleas court order sustaining preliminary objections and dismissing a complaint is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Department of Environmental Resources Appeal,* 91 Pa. Commonwealth Ct. 381, 497 A.2d 284 (1985).

Absolute privilege, as its name implies, is unlimited and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice *provided the statements are made or the actions are taken in the course of the scope of his authority or as it is sometimes expressed, within his jurisdiction. Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952).

As the doctrine evolved, the courts have sought to strike a balance by declaring that the public interest does not demand that all public officials be entitled to absolute privilege but only that "high ranking officers" be so protected. *Montgomery v. Philadelphia,* 392 Pa. 178, 140 A.2d 100 (1958), *rev'd on other grounds, Commonwealth v. Schab,* 477 Pa. 55, 383 A.2d 819 (1978).

Factors which determine whether a particular public officer is protected by absolute privilege include the nature of his duties, the importance of his office and particularly whether or not he has policy-making functions. *Id.*[2]

Rok asserts that a review of the powers and duties of the City Controller as set forth in the Home Rule Charter provide no authority for finding Flaherty a "high public official."

[2] This Court is cognizant that the scope of absolute immunity is evolving through statutory changes in light of the Supreme Court's decision in *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978).

Absent statutory classification, the parameters' establishing "high public official" status have been delineated by the judiciary on a case-by-case basis. In *Balshy v. Rank*, 507 Pa. 384, 490 A.2d 415 (1985), our Supreme Court reviewed this Court's original jurisdiction over all tort actions initiated against the Commonwealth or its officers acting in their official capacity. Although not dispositive ·in the instant case, *Balshy* contains a relevant discussion of the difference between an officer and employee of the Commonwealth:

> Guided by the principle of statutory construction that words and phrases be construed according to their common and approved usage, .·. . Commonwealth Court distinguished Commonwealth officers from ordinary Commonwealth employees, *describing officers as those persons to whom are delegated some of the sovereign functions of government, and employees as persons who merely exercise subordinate ministerial. functions.* More recently, the definition of 'officer,' as that term is used in §761, has been refined to include *'those persons who· perform state-wide policymaking functions and who· are charged with the responsibility for independent initiation of administrative policy regarding some sovereign function of state government.'*

507 Pa. at 389-90, 490 A.2d at 417 (citations omitted; emphasis added).

· Rok argues that the Controller's duties are merely ministerial and involve. no policy-making ·functions.

A ministerial act has been defined as "one which a public officer is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety .or

impropriety of the act to be performed." 17 McQuillen Municipal Corporations §51.19 (3rd ed. 1982).

Without question, the auditing, accounting and reviewing functions of the Controller's office are largely ministerial in nature.[3] However, this Court is persuaded that the City Controller of Pittsburgh, as an elected official,[4] is endowed with and exercises sovereign functions and sufficient discretionary authorities to be considered a high public official. Thus, he is to be afforded absolute immunity in the course of his employment.

Having determined that the Pittsburgh City Controller is a high public official, our next inquiry is whether the actions complained of occurred within the scope of that authority. *See Matson.*

In determining whether a cause of action in slander and defamation exists, the question of whether Flaherty had a duty to sign or countersign the contract is immaterial. It has been determined that he did. At issue is whether the actions Flaherty undertook *in conjunction* with his refusal to sign the document give rise to the instant complaint in defamation.

On various days in July and August, 1985, Flaherty issued press releases, held press conferences and appeared on television, during which time he released written statements relating to his refusal to countersign the Rok contract. These statements contained allegations of fraud, bidding irregularities and improper campaign contributions.[5]

---

[3] *See Flaherty v. City of Pittsburgh,* 100 Pa. Commonwealth Ct. 508, 515 A.2d 91 (1986).

[4] Section 400 of the Pittsburgh Home Rule Charter.

[5] In Count II of the amended complaint, Rok asserts a cause of action against the Controller for libel based upon the following allegations of fact:

> 34. On Friday, July 26, 1985, Flaherty issued a printed press release to various members of the media in which it was stated that the Craig Auto Service and Towing Con-

Mindful of the Controller's position in the executive branch of our tripartite system of government, we can find no statutory source nor can we attach any identifiable, authorized official function to support Flaherty's post refusal communications to the media.

tract had been '. . . referred to an appropriate law enforcement agency.' The press release also stated that the Contract '. . . is also connected with the Controller's lawsuit concerning irregularities in Mayor Caliguiri's campaign finance report.'

In Count III of the amended complaint, Rok asserts a cause of action against the Controller for slander based upon the following allegation of fact:

48. On Friday, July 26, 1985, Flaherty held a press conference at which time Flaherty stated to Jon Schmitz of the *Pittsburgh Press*, other members of the news media and the general public that there were bidding irregularities involved in the Craig Auto Service and Towing Contract. Flaherty also stated that there had been a campaign contribution made to Mayor Caliguiri by one of the bidders and that the FBI was handling the investigation. Although Flaherty declined to identify the bidder, only reference was made to 'Craig', thereby giving the false impression that it was Plaintiff who made an improper campaign contribution. Flaherty also stated that he possessed evidence of 'bid rigging,' again declined to name any bidder but directly and indirectly referred to Plaintiff in an improper manner which would imply innuendo to the public that Plaintiff was involved in the alleged improprieties.

In Count IV of the amended complaint, Rok asserts a cause of action against the Controller for libel and slander based upon the following allegations of fact:

59. Flaherty stated to the television reporter that firms like 'Craig Rok Towing' get City business because 'they have friends in high places.'

60. Flaherty stated in a videotaped interview that the Contract resulted from 'primarily political pressure from Councilman Jim O'Malley who is close friends with one of these people. That is the main reason. The Mayor keeps Jim O'Malley in line by taking care of Jim and taking care of Jim's friends.'

In *Biggans v. Foglietta,* 403 Pa. 510, 512, 170 A.2d 345, 347 (1961), the Supreme Court reversed a lower court's decision granting absolute immunity to a Philadelphia City Councilman: "A privileged communication is one made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable and probable cause. . . . Only the facts and circumstances can determine whether there is a privilege, abuse of privilege or no privilege.

The standards governing the trial court's sustaining of Flaherty's preliminary objections are strict. A demurrer for the testing of the legal sufficiency of the challenged pleadings admits all relevant facts pleaded and the demurrer shall not be sustained unless the law says with certainty that no recovery is possible. *Rosenwald v. Barbieri,* 501 Pa. 563, 462 A.2d 644 (1983), *cert. denied,* 465 U.S. 1024 (1984).

It cannot be said with certainty that the facts Rok alleges, if proved, would sustain a cause of action. Questions remain as to whether all of Flaherty's statements were made within the scope of his employment, and there are enough extenuating circumstances here to merit an examination of whether Flaherty's actions exceeded that scope. For this reason, we hold that the lower court committed an error of law.

Therefore, we reverse the common pleas court order which sustained Flaherty's preliminary objections and remand this case so that Flaherty may file an answer.

### ORDER

The Allegheny County Common Pleas Court order, No. GD85-14733 dated January 3, 1986, is reversed, and this case is remanded consistent with the foregoing opinion.

Jurisdiction relinquished.

578

CONCURRING AND DISSENTING OPINION BY JUDGE MAC-PHAIL:

I concur with that part of the opinion of the majority which holds that it was error for the trial court to sustain Mr. Flaherty's demurrer because there are unresolved issues.

I respectfully dissent to that part of the majority opinion which holds that Mr. Flaherty is entitled to the privilege of immunity as a high public official because I am of the opinion that his duties and authority fall outside of the definition of a high public official as set forth in *Balshy v. Rank*, 507 Pa. 384, 389-90, 490 A.2d 415, 417 (1985).