**Gary J. MATTA, Appellant,**

v.

**Judith M. BURTON, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1998.
Decided Dec. 23, 1998.

Albert P. Caruso, Pittsburgh, for appellant.

Ira Weiss, Pittsburgh, for appellee.

Before PELLEGRINI, Judge and KELLEY, Judge, and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue presented is whether Judith M. Burton (Burton), the School Board Director for the City of Duquesne, was acting within the scope of her authority when she publicly criticized Gary J. Matta (Matta), the Business Manager for the Duquesne School District. Because she was, we find that she is absolutely immune from liability for defamation and affirm the decision of the Court of Common Pleas of Allegheny County (trial court) sustaining her preliminary objections in the nature of a demurrer and dismissing Matta's complaint.

The relevant facts are as follows. On November 5, 1997, Matta filed a complaint in the trial court alleging that Burton defamed him in a letter to the editor of the McKeesport Daily News. Burton's letter, which was subsequently published, accused Matta of misconduct and malfeasance in his handling of a $13.5 million school renovation project. Burton signed the letter in her official capacity as "Duquesne School Board Director." Allegedly, the contractor performing the work was behind schedule and Burton accused Matta of failing to enforce a penalty provision in the contract.

Burton subsequently filed preliminary objections in the nature of a demurrer, based on the common law doctrine of absolute immunity for high public officials. The trial court granted Burton's motion and dismissed Matta's complaint on the grounds that Burton, as School Board Director, qualifies as a high public official, and that she was acting within the scope of her duties when she publicly criticized Matta.

On appeal,[1] Matta essentially concedes that Burton qualifies as a high public official.

---

1. Our scope of review of a trial court order     sustaining preliminary objections and dismissing

Matta argues, however, that Burton was not acting within the scope of her authority as School Board Director when she wrote the letter to the editor of the McKeesport Daily News. We disagree.

The doctrine of absolute privilege for high public officials is an unlimited privilege that exempts high public officials from lawsuits for defamation provided the statements made by the official are made in the course of her official duties and within the scope of her authority. *McKibben v. Schmotzer,* 700 A.2d 484 (Pa.Super.Ct.1997). The privilege applies even if the statements made by the high public official are false and/or were motivated by malice. *Id.* The purpose of the privilege is not the protection of the official but rather the preservation of society's interest in the unrestrained discussion of public matters, even where such discussion results in uncompensated harm to another person's reputation. *Id.*

On the issue of whether Burton qualifies as a high public official, Matta briefly argues that Burton's duties as School Board Director are merely ministerial. The determination of whether a particular individual qualifies as a high public official must be determined on a case-by-case basis and depends on the nature of the official's duties, the importance of her office, and whether she has policy-making functions. *McKibben.* Although this is an issue of first impression, we have no difficulty in concluding, upon review of relevant case law, that a school board director is sufficiently important and possesses such discretionary authority as to qualify as a high public official. *See, e.g., Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968) (township supervisor is high public official); *Suppan v. Kratzer,* 660 A.2d 226 (Pa.Cmwlth.1995) (mayor and borough council president are high public officials), *appeal denied,* 546 Pa. 659, 684 A.2d 560 (1996); *Rok* (city comptroller is high public official).

Having determined that Burton qualifies as a high public official, we turn our attention to the issue of whether her statements re-

garding Matta were made in the course of her official duties and within the scope of her authority, and thus privileged.

In *McKibben,* the chief of police and the mayor of the Borough of Dormont engaged in an argument that escalated into a brief scuffle. Following the scuffle, the mayor issued a press release accusing the police chief of a "brutal and unprovoked assault on myself, the Mayor," and stated, "[t]he lack of self-discipline on [the chief's] part is proof that he is unfit to serve in his management capacity." 700 A.2d at 487. The mayor also filed a criminal complaint against the chief for simple assault, which was ultimately dismissed. Following dismissal of her complaint, the mayor stated to the media that "[t]he acting chief lied. He has to wash his face in the morning and I hope he likes what he sees." 700 A.2d at 492.

The police chief filed suit against the mayor for these two instances of alleged defamation. On appeal, the Superior Court held that the mayor *was* absolutely immune from liability for defamation regarding the initial press release describing the chief as unfit to serve in a management capacity. Because the mayor was responsible for supervising the police force and had the authority to suspend the police chief if necessary, she was within the scope of her authority when she criticized the chief's ability to serve as chief of police. The Superior Court also reiterated the purpose of the immunity doctrine – the unfettered discussion of public matters – and found that the mayor's comments to the media were consistent with this purpose.

A different result was reached, however, with regard to the comments made by the mayor to the media after the dismissal of her criminal complaint against the chief. Specifically, her statements that he "lied" and "has to wash his face in the morning and I hope he likes what he sees." These comments were unrelated to public matters and were nothing more than the comments of a private citizen dissatisfied with the dismissal of her criminal complaint. As such, they were not

a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. *Rok v. Flaherty,* 106 Pa.Cmwlth.

570, 527 A.2d 211 (Pa.Cmwlth.1987), *appeal denied,* 517 Pa. 628, 538 A.2d 880 (1988).

related to her position as mayor and thus not protected by absolute immunity.

█ In the present case, we find that Burton's letter to the editor more closely resembles the privileged comments of the mayor in *McKibben* than those that were not. Just as the mayor in *McKibben* had the authority to oversee the operation of the police department, Ms. Burton, as School Board Director, has the authority to oversee the administration of school district contracts. And Burton's criticism of Matta's handling of the contract falls within the scope of her duties and authority because the public clearly has a right to be informed of possible mismanagement by Matta of a $13.5 million school renovation project.

Conversely, Burton's public criticism of Matta bears no resemblance to the unprotected comments made by the mayor in *McKibben.* Unlike the mayor, Burton did not comment on a matter affecting only her individual rights as a private citizen, but rather was attempting to inform the general public of what she perceived to be the mismanagement of a large public contract. Protection of the public interest was her intent, and that is the basis for the doctrine of immunity from liability for defamation for high public officials.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 23rd day of December, 1998, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

Judge KELLEY concurs in the result only.