**Dennis McERLEAN, Plaintiff,**

v.

**BOROUGH OF DARBY, Paula M. Brown, Charles Sanders, and Janice Davis, Defendants.**

**No. CIV. A. 00–3125.**

United States District Court, E.D. Pennsylvania.

May 21, 2001.

Alan B. Epstein, Peter Rosenzweig, Spector, Gadon & Rosen, Philadelphia, PA, for Plaintiff.

Jennifer L. Holsten, Thomas C. Gallagher, Holsten and Associates, Media, PA, Michael P. Pierce, Pierce & Hughes, P.C., Broomall, PA, for Defendants.

Donald T. Petrosa, Petrikin, Wellman, Damico, Carney & Brown, Media, PA, for Movant.

### *MEMORANDUM*

DuBOIS, District Judge.

## I. INTRODUCTION

In this action against the Borough of Darby ("the Borough" or "Darby") and individual defendants, Paula M. Brown ("Brown"), Charles Sanders ("Sanders"), and Janice Davis ("Davis"), plaintiff Dennis McErlean ("plaintiff" or "McErlean") challenges the termination of his employment as Chief Code Official of the Bor-

ough, alleging that he was terminated due to his political association in violation of the First and Fourteenth Amendments of the United States Constitution. In addition, plaintiff asserted claims against the Borough for deprivation of property without due process of law, violations of the Employee Retirement Income Security Act ("ERISA") and Public Health Service Act ("PHSA"), and breach of contract; against the individual defendants for defamation and invasion of privacy; and against defendant Brown for assault and battery. For the following reasons, defendants' motion for summary judgment will be granted in part and denied in part.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on June 20, 2000 by filing a Complaint and Petition for Temporary Restraining Order and For Preliminary Injunction. On June 21, 2000, defendants filed an answer to the petition and an Answer to Complaint with Affirmative Defenses and Counterclaims. The Court held a telephone conference with counsel for all parties on June 20, 2000, during which the Court scheduled a hearing on plaintiff's petition for a temporary restraining order for June 23, 2000. That hearing was subsequently canceled upon the parties' report to the Court that all issues raised in the petition for injunctive relief had been resolved by agreement. Plaintiff's petition for Temporary Restraining Order and For Preliminary Injunction was thereafter marked withdrawn without prejudice. A Response and Affirmative Defenses to defendants' counterclaims was filed on June 30, 2000.

On January 8, 2001, defendants filed a Motion for Summary Judgment; plaintiff filed his response on January 31, 2001. Defendants then filed a Motion for Leave to File a Reply on February 7, 2001; the Court granted that motion on February 9,

2001. Plaintiff filed a Sur-reply in support of his response to Defendants' Motion for Summary Judgment on March 22, 2001.

Defendants also filed a Motion for Leave to Amend Answer to Complaint on February 7, 2001; plaintiff filed a Response on February 22, 2001. By separate Order dated March 5, 2001, the Court granted defendants' Motion for Leave to Amend Answer to Complaint and granted plaintiff leave to request an extension of time for completion of discovery if deemed necessary by reason of the granting of defendants' motion to amend.

Defendants filed two motions on March 9, 2001 pertaining to discovery involving plaintiff's psychiatric expert, Eric Fine, M.D.—one motion to stay his trial deposition and another to preclude his testimony. On March 19, 2001, the Court denied defendants' motion to stay the trial deposition without prejudice and denied defendants' motion to preclude his testimony.

On May 9, 2001, after having been advised that on April 16, 2001, defendant, Paula M. Brown, filed a petition in bankruptcy under Chapter 13 of the Bankruptcy Code, Bankruptcy Case Number 01–15701, in the United States Bankruptcy Court for the Eastern District of Pennsylvania, the Court issued an Order staying all proceedings in the case pursuant to § 362 of the Bankruptcy Code., 11 U.S.C. § 362, and transferred the case to the civil suspense file. Notwithstanding the May 9, 2001 Order, the Court issues this Memorandum and Order so as to advise the parties of its disposition of the summary judgment motion. The opinion was virtually complete as of the time of the bankruptcy filing and does not require any further action on the part of the parties at this time as it is not appealable. *See* Fed.R.Civ.P. 54(b).

## III. STANDARD OF REVIEW

"[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" summary judgment shall be granted. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that Rule 56(c) requires "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Therefore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir. 1987) (citing *Anderson* and *Celotex Corp.*).

In deciding a motion for summary judgment, the evidence must be considered in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970) (quoting *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Therefore, "[i]f the evidence [offered by the non-moving party] is merely

colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). On the other hand, if reasonable minds can differ as to the import of the proffered evidence that speaks to an issue of material fact, summary judgment should not be granted.

## IV. DISCUSSION

### A. Claims Against the Borough of Darby and Defendant Brown Under the First and Fourteenth Amendments

In Counts One and Two, plaintiff states claims against the Borough and defendant Brown alleging that those defendants violated his First and Fourteenth Amendment rights by removing him as Chief Code Enforcement Officer on the basis of political affiliation (Count One) and in violation of his right to due process (Count Two). Plaintiff also alleges that the Borough (1) violated ERISA by improperly notifying him of his rights under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), resulting in a gap in his insurance coverage (Count Three); (2) violated the Public Health Service Act, 42 U.S.C. §§ 300bb–1 (Count Four); and (3) breached its contract of employment with plaintiff (Count Seven). The submissions of the parties with respect to these claims raise material issues of fact and summary judgment will be denied on Counts One, Two, Three, Four and Seven of plaintiff's Complaint.

### B. Claims Against the Individual Defendants

#### 1. *Claims Against Defendants Brown, Sanders and Davis—Defamation and False Light Invasion of Privacy*

In Counts Five and Six, plaintiff asserts claims against the individual defendants, Brown, Sanders and Davis, for defamation and false light invasion of privacy based on allegedly defamatory statements made about plaintiff by defendants in the Delaware County Daily Times. Defendants argue that the Court should grant summary judgment as to these claims because plaintiff has failed to prove the defamatory nature of the statements; defendants also claim that they were exercising their own First Amendment rights and enjoyed a privilege to say what they did; and on the ground that they are immune from suit under the doctrine of high public official immunity. For the reasons set forth below, the Court concludes that the individual defendants are immune from suit for defamation and false light invasion of privacy under the doctrine of absolute high public official immunity and does not reach defendants' other arguments.

Plaintiff's defamation claim is based on allegedly defamatory comments made about him in the Delaware County Daily Times, in an article that was published on August 10, 1999. An excerpt of the article follows:

> Mayor Paula Brown and two Democratic council members last night said they have the solution to all of the borough's ills.
>
> In fact, it's a five-pronged plan.
>
> Starting, of course, with the resignation of Nick DiGregorio, the borough manager....
>
> Then, Police Chief Robert Smythe should quit. And Council President Alfred Robinson Jr. And Code Enforcement Director Dennis McErlean. And last, but not least in the Democratic trio's minds, Solicitor Fincourt Shelton should resign.
>
> At a hastily called press conference in the parking lot of borough hall, Brown and her council allies said the five offi-

cials have abused power, paid bills without council's OK and covered up numerous wrongdoings in the borough over the past two years.

. . .

They . . . bashed DiGregorio and the other four officials, all Republicans or GOP allies, saying they have conspired to cover up numerous illegal actions by the administration.

"The five officials have abused power," Brown said. "They are all in it together. If one stays, you'll still have the infection. The administration is out of control."

. . .

"Absolute power corrupts," Sanders said. "We need to bring this council back to some semblance of order. We need someone at the state level to do a complete investigation."

"All five of these people are connected together, and they all function together to cover things up," Sanders continued. "They need to go in order for the town to recover."

"Let's get Darby back on the map," Davis said. "We're sick of it. It's time to fight back. And if they attack us, we'll shut this borough hall down. I'm not afraid of anyone. They have no respect for the mayor, and they have no respect for the taxpayers."

. . .

Mayor Wants Heads to Roll, Delaware County Daily Times, Aug. 10, 1999.

■ Under Pennsylvania law, "[t]he doctrine of high public official immunity is an unlimited privilege that exempts high public officials from lawsuits for defamation provided the statements made by the official are made in the course of his official duties and within the scope of his authority." *Jackson v. Coatesville Area School District*, 2000 WL 1185375, at *8 (E.D.Pa. Aug. 21, 2000) (citing *Matta v. Burton*, 721 A.2d 1164, 1166 (Pa. Commw.Ct.1998)).

■ The Pennsylvania common law doctrine of absolute immunity for high public officials " 'rests upon the * * * idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation.' " *Lindner v. Mollan*, 544 Pa. 487, 490, 677 A.2d 1194, 1195 (1996) (quoting *Montgomery v. City of Philadelphia*, 392 Pa. 178, 181, 140 A.2d 100, 102 (1958)) (modification in original). As observed by the Pennsylvania Supreme Court, "[t]his sweeping immunity is 'not for the benefit of high public officials, but for the benefit of the public.' " *Id.* at 491, 677 A.2d at 1195 (quoting *Barto v. Felix*, 250 Pa.Super. 262, 272, 378 A.2d 927, 932 (1977) (Spaeth, J., dissenting)).

■ Although traditionally applied to defamation cases, the doctrine of high public official immunity has also been applied to cases of false light invasion of privacy. In *Smith v. School District of Philadelphia*, this Court "predict[ed] that the Supreme Court of Pennsylvania would hold that the Tort Claims Act does not abrogate high public official's absolute immunity from civil suits for intentional infliction of emotional distress and invasion of privacy." *Smith v. School District of Philadelphia*, 112 F.Supp.2d 417, 426 (E.D.Pa. 2000). *See also Poteat v. Harrisburg School District*, 33 F.Supp.2d 384, 396 (M.D.Pa.1999) (concluding that defendants, as high public officials, had absolute immunity from defamation suits for invasion of privacy/false light). Based on the underlying rationale of the immunity doctrine, the Court concludes, as it did in *Smith*, that the doctrine of high public official immuni-

ty from defamation suits extends to suits for false light invasion of privacy.

■ Whether a person is a high public official depends on "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." *Lindner v. Mollan,* 544 Pa. 487, 495, 677 A.2d 1194, 1198 (1996) (quotation omitted). Applying this analysis, courts have granted high public official immunity to borough mayors, *id.* at 496–97, 677 A.2d at 1198–99, and borough council members. *Satterfield v. Borough of Schuylkill Haven,* 12 F.Supp.2d 423, 441 (E.D.Pa.1998). In *Satterfield,* the court reasoned that "Pennsylvania statutory law makes borough council members legislators, and therefore primary policy makers, of boroughs in Pennsylvania." *Id.* at 442 (citing 53 Pa. Cons.Stat.Ann. §§ 46005–46006). Thus, the court had "no trouble finding that borough council members qualify as 'high public officials' for the purposes of immunity from defamation." *Id.* In this case, defendant Brown is the Mayor of the Borough of Darby; defendants Sanders and Davis were Darby Borough Council members at the time the statements were made. Accordingly, the Court concludes that all three individual defendants were high public officials at the time the statements were made. The remaining questions for the Court are thus whether the statements at issue were made in the course of official duties and within the scope of defendants' official authority.

■ In *Matta v. Burton,* 721 A.2d 1164 (Pa.Commw.Ct.1998), plaintiff sued defendant school board director for writing a letter to the editor of a newspaper accusing the plaintiff of misconduct and malfeasance in the way he handled a school renovation project. The *Matta* court concluded that defendant was immune from suit based on the letter to the editor be-

cause the "[p]rotection of the public interest was her intent, and that is the basis for the doctrine of immunity from liability for defamation for high public officials." *Id.* at 1167. *See also Jackson,* 2000 WL 1185375 (concluding that school district officials are entitled to high public official immunity from suit on the basis of letters concerning plaintiff's job performance).

In this case, the statements about which plaintiff complains dealt with the alleged mismanagement and corruption of public officials in the Borough of Darby. In light of the subject matter of the allegedly defamatory statements, the Court concludes that defendants, as Mayor of the Borough and members of Darby Borough Council, made them within the scope of their official duties and authority. Moreover, the issues on which the Delaware County Daily Times focused—corruption, mismanagement and alleged abuses of power—"were issues about which the public has a right to be informed." *Jackson,* 2000 WL 1185375, at \*9. The Court thus concludes that defendants Brown, Sanders and Davis are entitled to high public official immunity on plaintiff's defamation and false light claims.

### 2. Claim Against Defendant Brown—Assault and Battery

Plaintiff also asserts an assault and battery claim against defendant Brown for her alleged assault of plaintiff in the Borough administrative office on September 3, 1999. Defendant Brown argues that any injuries plaintiff suffered as a result of this incident were work-related and thus covered by the Pennsylvania Workmen's Compensation Act ("the Act"). The Act provides for an injured worker's exclusive remedy for injury at the workplace:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees,

his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death....

77 Pa. Cons.Stat.Ann. § 481(a).

There is evidence that plaintiff filed a worker's compensation claim against the Borough seeking payment for full disability starting on March 1, 2000 as a result of a work related injury received September 3, 1999. *See* Claim Petition for Workers' Compensation, dated April 12, 2000 (Ex. L to Defs.' Reply to Pl.'s Response to Defs.' Mot. for Summ. J.). On the claim form, in response to a question as to how the injury happened, plaintiff wrote: "injury at work when other employee of Borough of Darby struck me." *Id.*

▮ Although the Workmen's Compensation Act, as a general rule, provides the exclusive remedy for injuries sustained at the workplace, the Act specifically provides an exception, known as the personal animus exception, to this general rule as follows:

> The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment....

77 Pa. Cons.Stat.Ann. § 411(1). When an injury occurs in the employer's premises, there is a rebuttable presumption that any injury is covered under the Act. *Kohler v. McCrory Stores,* 532 Pa. 130, 136, 615 A.2d 27, 30 (1992). In order to implicate the personal animus exception, there must be "a showing that the victim was attacked for purely personal reasons unrelated to employment." *Krasevic v. Goodwill Indus. of Central Pa.,* 764 A.2d 561, 566 (Pa.Super.Ct.2000); *see also Kohler,* 532

Pa. at 136, 615 A.2d at 30. In this case, plaintiff has presented evidence that defendant Brown sought to remove plaintiff from his position at the Borough for political reasons and that she had personal animosity toward plaintiff. The question of defendant Brown's motivation, i.e., whether she was motivated by personal animus toward McErlean or an employee paycheck issue that arose on September 3, 1999, is ultimately a question for the trier of fact.

▮ In addition, although the Act provides an injured employee's exclusive remedy for compensation from their employer, it does not preclude common law tort liability of an employee to a co-employee for intentional torts. *See Gardner v. Erie Ins. Co.,* 456 Pa.Super. 563, 691 A.2d 459, 463–64 (1997) (concluding that "a co-employee who is injured in the course of employment cannot hold another co-employee liable for injuries occasioned by his or her "act or omission" (negligence); rather, such co-employee can only be held liable for injuries resulting from intentional acts") (italics omitted); *see also Abbott v. Anchor Glass Container Corp.,* 758 A.2d 1219, 1225 (Pa.Super.2000) (citing *Gardner*) (same). Given that there are unsettled factual questions as to defendant Brown's motivation for allegedly assaulting plaintiff and that the Workmen's Compensation Act does not preclude individual liability for intentional torts, plaintiff's claim for assault and battery brought against defendant Brown may proceed and summary judgment on this claim will be denied.

## V. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment will be granted in part and denied in part. An appropriate order follows.

## ORDER

**AND NOW,** this 21st day of May, 2001, upon consideration of Defendants' Motion for Summary Judgment (Document No. 14, filed January 8, 2001), Plaintiff's Response to Defendants' Motion for Summary Judgment (Document No. 16, filed January 29, 2001), Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment (Document No. 19, filed February 7, 2001), and Plaintiff's Sur-reply in Support of His Response in Opposition to Defendants' Motion for Summary Judgment (Document No. 28, filed March 22, 2001), for the reasons stated in the attached Memorandum, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Document No. 14) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendants' Motion for Summary Judgment (Document No. 14) is DENIED with respect to plaintiff's claims against the Borough of Darby and defendant Brown for violations of plaintiff's First and Fourteenth Amendment rights (Counts One and Two) and plaintiff's claims against the Borough of Darby (Counts Three, Four and Seven) on the ground that the parties have presented genuine issues of material fact;

2. Defendants' Motion for Summary Judgment (Document No. 14) is **GRANTED** with respect to plaintiff's claims of defamation and false light invasion of privacy (Counts Five and Six) on the ground that the individual defendants are immune from suit under the doctrine of absolute high public official immunity; and

3. Defendants' Motion for Summary Judgment (Document No. 14) is **DENIED** with respect to plaintiff's assault and battery claim against defendant Brown (Count Eight) on the

ground that the parties have presented genuine issues of material fact.