Alexander Jaffurs, Counsel for State Liquor Control Board, J. Shane Creamer, Attorney General, and David Jewell, Administrative Assistant to Attorney General, Appellants, *v.* Joseph F. O'Neill, Commissioner of Police, Appellee.

Argued September 6, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Burton D. Morris,* Deputy Attorney General, with him *Edward Weintraub,* Deputy Attorney General, *Herman Rosenberger, II,* Assistant Attorney General, and *Israel Packel,* Attorney General, for appellants.

*Robert B. Mozenter,* for appellee.

OPINION BY JUDGE WILKINSON, October 16, 1973:

Joseph F. O'Neill, Commissioner of Police of the City of Philadelphia, appellee, instituted an action in trespass for libel against Alexander Jaffurs, counsel for the State Liquor Control Board, J. Shane Creamer, Attorney General, and David Jewell, Administrative Assistant to the Attorney General, appellants, in the Court of Common Pleas of Philadelphia. The complaint alleges that on or about September 24, 1971, in the City of Philadelphia, the appellants, defendants below, conducted raids on bars, using State Police to the exclusion of the Philadelphia authorities. It is alleged that prior to the raids, appellants, defendants below, called a press conference and stated that the reason local authorities were not called in was that " 'Mr. Creamer feels the fewer that know the better.' " It is alleged further that "during the course of the raid, defendant, Alexander Jaffurs, Chief Counsel for the State Liquor Control Board, commented to the reporters of the Philadelphia Daily News that 'the Police sure gave them a pipeline. They knew all about it. There hasn't been a Policeman here since we arrived. They sure know when to disappear, don't they?' " It is alleged that these statements were published in the

September 24, 1971 edition of the Philadelphia Daily News, and that they were made maliciously and with intent to injure the appellee, plaintiff below, since he was Police Commissioner of the City of Philadelphia.

Appellants, defendants below, filed preliminary objections, raising, *inter alia,* the question of the jurisdiction of the Court of Common Pleas of Philadelphia to hear the case. The lower court dismissed all the preliminary objections. An appeal was taken to the Superior Court where oral argument was had. Following oral argument, the Superior Court transferred the case to this Court for disposition. We must reverse the lower court and hold that it was without jurisdiction. It is, therefore, unnecessary to rule on the other preliminary objections.

The issue here presented is a very narrow one. The court below and the attorneys all agree that if the appellants here, defendants below, were acting within the scope of their authority and official capacity as public officials, then the exclusive jurisdiction is in this Court. *See* Article IV, Section 401, of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, No. 223, 17 P.S. §211.401. Appellee, plaintiff below, argues, and the court below ruled, that the officials took themselves out of the scope of their authority and official capacity when they made these statements to the press.

Our Supreme Court has ruled squarely on this point in *Matson v. Margiotti,* 371 Pa. 188, 203, 88 A. 2d 892, 900 (1952):

"One other point has given us grave concern: Was the immediate delivery to the press by the Attorney General of a copy of his letter, prior to its delivery, to the District Attorney—a regrettable practice pursued by high ranking officials whose victims first learn their fate by radio or press—incidental to and hence entitled

to the same absolute privilege as the letter, or was it outside the scope of the Attorney General's official duties or powers and therefore entitled only to a conditional privilege? Here once again we have competing rights: the right of the individual to be protected in her property and reputation, and the right of the public to be kept informed of the official actions of their public officials. We have found only two cases on this point in this virtually unexplored field.

"In Spalding v. Vilas, 161 U.S. 483, the Supreme Court sustained the right of a Postmaster General to write a notice to all claimants calling their attention to the provisions of an Act of Congress and giving his own interpretation thereof, even though it resulted in serious damage to the plaintiff, and even though plaintiff alleged it was maliciously made. The Court held that the principle of absolute immunity from civil suits should (page 498) '... apply to a large extent to official communications made by heads of Executive Departments when engaged in the discharge of duties imposed upon them by law.'

"An even closer case is Glass v. Ickes, Secretary of the Interior, 117 F. 2d 273. In that case Glass brought an action of defamation against Ickes, alleging that Ickes had maliciously issued a false and defamatory press memorandum or release in which he said that the plaintiff had been barred from practice from the Department of the Interior, and that all oil operators should look into the matter 'before they kicked in to the plaintiff's proposed one-man lobby.' The Court held the press release was an absolutely privileged communication and consequently the motive or the malice of the defendant was immaterial. Justice VINSON, now Chief Justice of the Supreme Court of the United States, said in a footnote on page 278: 'The practice of cabinet officers to issue public statements in respect to the activity

of their departments is too well known to require comment. Indeed, such announcements serve a useful if not essential role in the functioning of the democratic processes of government.'

"We believe it is in the public interest to permit an Attorney General to keep the public advised of his official acts and conduct where such actions are in the course of and within the scope of his official duties or powers. We therefore hold that under the facts in this case the delivery to the public press of the letter of the Attorney General to the District Attorney of Allegheny County dated January 5, 1951, was within the protection of the absolute privilege accorded in this case to the Attorney General."

In *Montgomery v. Philadelphia*, 392 Pa. 178, 140 A. 2d 100 (1958), the Supreme Court ruled that city officials were acting within the scope of their duties and authority when they made what were alleged to be defamatory communications to the press: "The public interest demands that these city servants, the individual defendants, be encouraged to inform the community of the progress or the lack of progress of important public works paid for by the taxpayers. Further, the public has a legitimate concern with the reasons, if any, for apparently unreasonable delays in the performance of city contracts." *Montgomery v. Philadelphia*, supra, at 187, 140 A. 2d 100, 105. *See also Mc-Cormick et al. v. Specter*, 220 Pa. Superior Ct. 19, 275 A. 2d 688 (1971).

The order of the court below is reversed and the preliminary objection based on lack of jurisdiction is sustained.