612 A.2d 591

**Marvin and Kathleen FACTOR, his wife, Appellants,**

**v.**

**W. Wilson GOODE and Cheryl Weiss, Appellees.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 4, 1992.

Decided June 25, 1992.

Kathleen M. Factor, for appellants.

Susan Shinkman, for appellees.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

SMITH, Judge.

Marvin and Kathleen Factor (Appellants) appeal from the order of the Court of Common Pleas of Philadelphia County sustaining the preliminary objections of W. Wilson Goode, Mayor of the City of Philadelphia, and Cheryl Weiss, Revenue Commissioner of the City of Philadelphia (collectively Appellees), to the defamation complaint filed by Appellants and dismissing their action. The issue before this Court is whether the trial court erred in holding that Appellees have an absolute privilege against liability for alleged defamatory statements made by them against Appellants.

On February 27, 1990, Appellants filed a civil action against Appellees and made the following averments in their complaint. Both Appellants are attorneys who practice as a general partnership in Philadelphia. On February 21, 1990, Appellees held a press conference wherein they announced the names of twenty property owners with the highest delinquent real estate taxes, which included Appellants who owed $23,-

292.53 in real estate taxes on their private residence in Philadelphia.[1] During the course of the press conference, Appellees described the twenty property owners as "deadbeats" and "tax cheats" who think that "they're above the law." These comments were subsequently publicized in the Philadelphia Inquirer and Daily News and on various local television news programs.

Appellants allege that the statement that they were among the top twenty delinquent real estate taxpayers is false and that Appellees knew that other city property owners owe greater taxes than Appellants, yet intentionally chose not to publicize those taxpayers' names: hence, such conduct by Appellees, as well as their statements about Appellants, was defamatory. Appellants' complaint further alleged that Appellees' conduct in intentionally defaming Appellants constitutes malice and willful misconduct because Appellees had been advised that Appellants' failure to pay real estate taxes was related to Marvin Factor's catastrophic injury, resulting in his inability to work. Appellants stressed that by Appellees' willful misconduct and actual malice in making oral and written defamatory statements about Appellants, Appellees abrogated any official immunity for their conduct.

Appellees on March 22, 1990 filed preliminary objections demurring to the complaint and raising the defenses of privilege and immunity.[2] On August 27, 1990, the trial court sustained Appellees' preliminary objections and, relying on *Montgomery v. Philadelphia,* 392 Pa. 178, 140 A.2d 100 (1958), held that Appellees had an absolute privilege against liability

1. The actual amount owed by Appellants is not in dispute as they do not deny the amount owed.

2. This Court notes that Pa. R.C.P. No. 1030 requires that all affirmative defenses, including privilege and immunity from suit, shall be pleaded in a responsive pleading under the heading "New Matter." However, this Court has held that preliminary objections are a proper vehicle for raising immunity where, as here, the defense appears on the face of the pleadings under attack and the opposing party has not filed preliminary objections to the preliminary objections raising privilege and immunity from suit. *Wurth v. City of Philadelphia,* 136 Pa.Commonwealth Ct. 629, 584 A.2d 403 (1990); *Scott v. Willis,* 116 Pa.Commonwealth Ct. 327, 543 A.2d 165 (1988). Appellants have made no such objection here.

for the statements because they were "high public officials" whose statements were made "within the scope of their authority." Appellants appealed to the Superior Court which subsequently transferred the matter to this Court.

When reviewing a trial court order sustaining preliminary objections in the nature of a demurrer, this Court's scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Petula v. Mellody,* 138 Pa.Commonwealth Ct. 411, 588 A.2d 103 (1991). In determining whether to sustain preliminary objections in the nature of a demurrer, all well-pleaded facts and inferences which may be reasonably deduced therefrom must be accepted as true. *Malia v. Monchak,* 116 Pa.Commonwealth Ct. 484, 543 A.2d 184 (1988). Since the sustaining of a demurrer results in the denial of a claim or dismissal of a suit, it should be sustained only in cases that are clear and free from doubt. *Wurth v. City of Philadelphia,* 136 Pa.Commonwealth Ct. 629, 584 A.2d 403 (1990).

It has long been the law in this Commonwealth that high public officials are exempted by the doctrine of absolute privilege from all civil suits for damages arising out of false defamatory statements and even from statements motivated by malice, provided the statements are made in the course of the scope of the high official's authority or within his or her jurisdiction. *Montgomery; Rok v. Flaherty,* 106 Pa.Commonwealth Ct. 570, 527 A.2d 211 (1987), *appeal denied,* 517 Pa. 628, 538 A.2d 880 (1988). The courts have sought to strike a balance by declaring that the public interest does not demand that all public officials be entitled to absolute privilege, but that only "high ranking officers" be so protected. *Montgomery; Rok.* This absolute privilege has as its purpose "the protection of society's interest in the unfettered discharge of public business and in full public knowledge of the facts and conduct of such business." *Montgomery,* 392 Pa. at 183, 140 A.2d at 103. "Absolute [privilege] is thus a means of removing any inhibition which might deprive the public of the best service of its officers and agencies." *Id.*

■ The parties do not dispute that Appellees are high public officials. Indeed, in *Rok,* this Court held that the Pittsburgh city controller was a high public official for the purpose of his claim of absolute privilege in a defamation action and was thus to be afforded that privilege in the course of his employment. Appellees' positions as mayor and revenue commissioner clearly fall within the category of high public officials.

■ This having been determined, the next inquiry is whether the actions complained of occurred within the scope of Appellees' authority. *Rok.* The trial court noted that the collection of taxes is a principal function of government and held that such function is well within the scope of authority of the mayor and the revenue commissioner. This Court agrees. In *Montgomery,* the Supreme Court held that defamatory statements made by the Philadelphia deputy commissioner of public property and the city architect were made within the scope of their duties and authority. The Court, after reviewing the nature of the defendants' duties, explained that:

> The public interest demands that these city servants . . . be encouraged to inform the community of the progress or the lack of progress of important public works paid for by the taxpayers. Further, the public has a legitimate concern with the reasons, if any, for apparently unreasonable delays in the performance of city contracts.

*Id.,* 392 Pa. at 187, 140 A.2d at 105.

Similarly, the public has a reasonable concern with the status of delinquent property taxes and the reasons therefor. Thus, the statements made by Appellees, even if defamatory, were within the scope of their duties and authority and are absolutely privileged. *See also Jaffurs v. O'Neill,* 10 Pa.Commonwealth Ct. 346, 310 A.2d 698 (1973) (state officials who made statements to reporters regarding the conduct of local police officials during state raids on bars were acting within the scope of their authority and official capacity as public officials at the time they made the statements); *McCormick v. Specter,* 220 Pa.Superior Ct. 19, 275 A.2d 688 (1971) (although a district attorney's statements regarding an ongoing investi-

gation by the city may have been excessive, they were nonetheless "closely related" to a matter pending within his office and were thus within the scope of the privilege).[3]

■ The gravamen of Appellants' argument is that the absolute privilege of public officials has been abrogated by Section 8550 of the Judicial Code, 42 Pa.C.S. § 8550, which provides:

### § 8550. Willful misconduct

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

Appellants assert that Section 8550 takes effect because the term "willful misconduct" in the context of governmental immunity is synonymous with "intentional tort," in this case the intentional tort of defamation. *See King v. Breach,* 115 Pa.Commonwealth Ct. 355, 540 A.2d 976 (1988).

However, this Court's review of those cases discussing Section 8550 reveals no instance in which it has been applied to defeat the absolute privilege of a high public official, as Appellants suggest. Rather, the language of Section 8550 expressly refers to "employees" and has been applied only in those cases regarding employees of local agencies. *See McNeal v. City of Easton,* 143 Pa.Commonwealth Ct. 151, 598 A.2d 638 (1991) (Section 8550 considered where former city

---

**3.** Appellants argue that Appellees were acting beyond the scope of their authority because of the provision in Section 2 of the Act of May 13, 1857, P.L. 489, 53 P.S. § 17047, that the receiver of taxes in the City of Philadelphia is required to publish the names of all delinquent taxpayers. Appellants reason that Appellees had no authority to publish the *amount* owed, and thus exceeded their authority. This Court notes that Section 2 does not expressly limit Appellees' actions to the publication of names, but merely provides what they must do at a minimum. Thus, it does not appear that Appellees' additional actions were proscribed by law.

employee sued his former supervisors for their alleged intentional torts); *Lancie v. Giles*, 132 Pa.Commonwealth Ct. 255, 572 A.2d 827 (1990) (homeowners sued police officers for their alleged intentional torts); *Yakowicz v. McDermott*, 120 Pa.Commonwealth Ct. 479, 548 A.2d 1330 (1988), *appeal denied*, 523 Pa. 644, 565 A.2d 1168 (1989) (defamation action based on malicious publication may be brought against local agency employee); *Malia* (Section 8550 applied in·defamation action by school vice-principal against principal, superintendent, and individual members of the school board); *Scott v. Willis*, 116 Pa.Commonwealth Ct. 327, 543 A.2d 165 (1988) (Section 8550 considered in suit by teacher against individual school district officials); *Keeler v. Everett Area School Dist.*, 111 Pa.Commonwealth Ct. 297, 533 A.2d 836 (1987) (suit by student against school board president, superintendant, and school principal); *Acker v. Spangler*, 92 Pa.Commonwealth Ct. 616, 500 A.2d 206 (1985) (personal injury action in intentional tort against a school district employee); *Morris v. Musser*, 84 Pa.Commonwealth Ct. 170, 478 A.2d 937 (1984) (plaintiff alleged willful misconduct against a police officer).

Furthermore, this Court's decision in *Rok* is controlling in the matter sub judice. Appellants attempt to distinguish *Rok* by asserting that it was a case of "negligent defamation," whereas Appellants' claim is for "malicious defamation." A review of *Rok* reveals no support for this assertion. Moreover, under the analysis applied in *Rok*, absolute privilege specifically includes intentional statements motivated by malice. The opinion did not address Section 8550 which has no bearing on the common law absolute privilege regarding high public officials, but rather addresses only those employees of local agencies who do not fall within the category of a high public official.[4] Accordingly, the trial court made no error of law and its order is therefore affirmed.

4. Appellants further attempt to distinguish *Rok* by noting that this Court remanded to the trial court because questions remained as to whether the defendant's defamatory statements were made within the scope of his employment. However, in light of this Court's holding that the statements made sub judice were within the scope of Appellees' employment, the disposition in *Rok* remains inapposite to the present decision.

## ORDER

AND NOW, this 25th day of June, 1992, the order of the Court of Common Pleas of Philadelphia County is affirmed.

COLINS, Judge, concurring.

I concur with the majority in their conclusion that the remarks by the Mayor, in the instant matter, were absolutely privileged pursuant to Pennsylvania law. However, I would like to further indicate that the term "deadbeats," if not accurately applied, is clearly defamatory. Furthermore, the unfortunate use of the term "tax cheats" clearly implies criminal conduct. In the instant matter, the record is entirely devoid of even a scintilla of evidence that the Factors engaged in criminal conduct.

I would like to express my personal belief that the legislature should reconsider its granting of absolute immunity to public officials when they engage in conduct whereby, for the benefit of the media, they wantonly accuse citizens of criminal acts when no evidence exists to support such conclusions.