# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Moody,　　　　　　　　　　 :
　　　　　　　　Appellant　　　　　 :
　　　　　　　　　　　　　　　　　　 :
　　　　v.　　　　　　　　　　　　 :　　No. 376 C.D. 2021
　　　　　　　　　　　　　　　　　　 :
Michael Wenerowicz, former Deputy　 :　　Submitted: June 17, 2022
of the Department of Corrections　　 :
("D.O.C."); Keri Moore, Assistant　　 :
Chief Grievance Officer of the　　　 :
D.O.C.; Lawrence Mahally, former　　 :
Superintendent of State　　　　　　 :
Correctional Institution Dallas　　　 :
("SCI Dallas"); Giselle Malet,　　　 :
Mailroom Supervisor of　　　　　　　 :
S.C.I. Dallas　　　　　　　　　　　 :

BEFORE:　HONORABLE PATRICIA A. McCULLOUGH, Judge
　　　　　HONORABLE MICHAEL H. WOJCIK, Judge
　　　　　HONORABLE STACY WALLACE, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH　　　　　　　　　　FILED: May 31, 2023


　　　　　This case involves claims brought by an incarcerated inmate against several current or former employees of the Pennsylvania Department of Corrections (DOC). Appellant Brandon Moody (Moody) alleges that DOC employees wrongfully confiscated certain items of legal mail that he needed to prepare a petition pursuant to the Post Conviction Relief Act (PCRA).[1] He appeals, *pro se*, from the December 10, 2020 order of the Court of Common Pleas of Luzerne County, Pennsylvania (trial court), which 1) sustained the preliminary objections of Appellees Michael

---

[1] 42 Pa. C.S. §§ 9541-9546.

Wenerowicz, former Deputy of DOC; Keri Moore, Assistant Chief Grievance Officer of DOC; and Giselle Malet, Mailroom Supervisor of State Correctional Institution (SCI) Dallas (SCI-Dallas) (collectively, Appellees),[2] and 2) dismissed Moody's complaint (Complaint). After careful review, we affirm.

## I. FACTS AND PROCEDURAL HISTORY[3]

Sometime in April 2018, while housed at SCI-Dallas, Moody became aware of two appellate court cases that discussed "new developments in neuroscience" related to the cognitive development of adolescents in their late teens and twenties. The cases and the scientific principles they discussed indicated that these adolescents have similar brain development as juveniles and, accordingly, have diminished culpability. (Complaint, O.R. Document (Doc.) 1 ¶¶ 8-13.) Moody intended to use these cases in the preparation of a PCRA petition challenging the legality of his life sentence.[4] (*Id.* ¶ 13.) He contacted his "associate," Sue Wooley, and asked that she retrieve the two cases and send them to him. She attempted to do on or about April 26, 2018. (*Id.* ¶ 15.)

On May 7, 2018, Moody received an "Unacceptable Correspondence Form" from the mailroom at SCI-Dallas informing him that certain pieces of legal mail from Wooley had been confiscated. (*Id.* ¶¶ 18-20.) Moody nevertheless continued to receive other legal mail during this period regarding a pending federal lawsuit he had filed against other DOC employees (federal suit). (*Id.* ¶ 16.) Moody filed a formal

---

[2] Appellee Lawrence Mahally, former Superintendent of SCI-Dallas, did not join in the preliminary objections because he was not properly served with the Complaint.

[3] We glean the relevant facts and procedural history from the original record (O.R.) transmitted from the trial court and from the documents attached to the parties' filings in this Court.

[4] As will be discussed below, Moody is serving a mandatory life sentence imposed after he was convicted of first-degree murder.

2

grievance, which was denied. (*Id.* ¶ 28.) While the grievance was pending, on June 13, 2018, Moody's PCRA petition was denied.[5] (*Id.* ¶ 27.) Moody continued to appeal the confiscation through the internal administrative process at the DOC, but to no avail. (*Id.* ¶¶ 28-34.)

Moody filed his Complaint in the trial court on July 21, 2020. Therein he alleged that DOC employees 1) retaliated against him because he filed the federal suit, 2) established unlawful confiscation policies, 3) denied him due process, and 4) abused the administrative process. (*Id.* ¶¶ 35-42.) He asserted First Amendment[6] (Count I), procedural due process (Count II), substantive due process (Count III), and "malicious abuse of process" (Count IV) claims. (O.R. Doc. 1.)[7]

Appellees filed preliminary objections to the Complaint and a brief in support on October 6, 2020. (O.R. Docs. 9, 10.) In response, on October 27, 2020, Moody filed a Motion for Extension of Time to File Amended Complaint (First Extension Motion).[8] The trial court granted the motion on November 9, 2020, and gave

---

[5] The PCRA court denied Moody's first PCRA petition without a hearing. *See Commonwealth v. Moody* (Pa. Super., No. 2184 EDA 2018, filed August 19, 2019), 2019 WL 3913232, at *2. Moody appealed the PCRA court's decision, and the Superior Court affirmed. *Id.* at slip op. 17, 2019 WL 3913232, at *7 ("We have thoroughly reviewed the trial record, this Court's opinion on direct appeal, and the PCRA court's opinion; the record supports PCRA counsel's analysis that either Moody had waived his claims or they lacked merit.")

[6] U.S. Const. amend. I.

[7] The Complaint was not endorsed with a Notice to Defend as required by Pennsylvania Rule of Civil Procedure (Pa.R.Civ.P.) 1018.1(a).

[8] Pursuant to the "prisoner mailbox rule," filings from incarcerated individuals in civil proceedings are deemed to be filed as of the date they are deposited in the prison mailbox or are given to prison officials for mailing. *Kittrel v. Watson*, 88 A.3d 1091, 1097 (Pa. Cmwlth. 2012). *Cf.* Pa.R.A.P. 121(f) (*pro se* filings by incarcerated individuals are deemed filed "as of the date of the prison postmark or the date the filing was delivered to the prison authorities for purposes of mailing **(Footnote continued on next page…)**

Moody 20 days, or until November 30, 2020,[9] to file an amended complaint. (O.R. Doc. 17.) Appellees thereafter filed a second set of preliminary objections substantially identical to the first set (Preliminary Objections). (O.R. Doc. 19.)[10] In the Preliminary Objections, Appellees demurred to Moody's Complaint on multiple grounds.

On December 3, 2020, after the trial court's November 30, 2020 deadline, Moody filed a second Motion for Extension of Time to File An Amended Complaint (Second Extension Motion), which was received by the trial court on December 9, 2020. (O.R. Doc. 20.) The trial court denied the motion the same day and sustained Appellees' Preliminary Objections the following day. (O.R. Docs. 22, 24.) The prothonotary mailed a copy of the trial court's December 10, 2020 order to Moody on December 12, 2020.[11] On December 15, 2020, the prothonotary received and filed an amended complaint dated December 9, 2020 (Amended Complaint). (O.R. Doc. 28.)

---

as documented by a properly executed prisoner cash slip or other reasonably verifiable evidence.") Moody's filings are not accompanied by either cash slips or other evidence indicating the date on which they were deposited in the mail or with prison authorities for mailing. Nevertheless, neither the trial court nor Appellees have challenged the application of the prisoner mailbox rule to Moody's filings. We accordingly will utilize the date on the filings, and not the date they were received by the trial court prothonotary, for purposes of considering the issues in this appeal.

[9] The 20-day deadline for filing an amended complaint expired on November 29, 2020, a Sunday. The deadline therefore extended to the next business day, or Monday, November 30, 2020. *See* Pa.R.Civ.P. 106(b).

[10] Only Appellees Wenerowicz and Moore filed preliminary objections on October 6, 2020, as only they had properly been served with the Complaint. After Appellee Malet was served, Appellees Wenerowicz, Moore, and Malet filed the second set of preliminary objections on November 9, 2020 (O.R. Doc. 19).

[11] The prothonotary's envelope is postmarked December 12, 2020, and was mailed to Moody at SCI-Camp Hill, P.O. Box 8837, 2500 Lisburn Rd., Camp Hill, PA 17001-8837. The envelope also contains an "Unable to Forward" label that appears to be dated January 21, 2021. (O.R. Doc. 32.)

4

On February 10, 2021, the prothonotary received a "Notice of Nunc Pro Tunc Appeal" dated January 27, 2021 (Notice of Appeal).[12] (O.R. Doc. 32.) Moody did not file a separate petition requesting permission to appeal *nunc pro tunc*, and the trial court did not conduct an evidentiary hearing to determine if *nunc pro tunc* relief was appropriate. The trial court nevertheless addressed the timeliness of Moody's appeal and the availability of *nunc pro tunc* relief in its opinion pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a) (Trial Court Opinion) (O.R. Doc. 42.). The trial court concluded that, "because [Moody] has failed to demonstrate fraud or breakdown in the [trial] court's operation, and because [Moody] otherwise failed to file timely a notice of appeal, [Moody's] appeal from the trial court's [o]rder of December 10, 2020, should be quashed as untimely." (Trial Court Opinion (Op.), O.R. Doc. 42 at 8.)

## II. TIMELINESS AND *NUNC PRO TUNC* RELIEF[13]

Appeal periods are jurisdictional and cannot be extended by grace or mere indulgence. *H.D. v. Department of Public Welfare*, 751 A.2d 1216, 1219 (Pa. Cmwlth.

---

[12] The Notice of Appeal initially was received by this Court on February 3, 2021. Pursuant to Pa. R.A.P. 905(a)(4), we forwarded it to the trial court prothonotary for filing and processing. Pa. R.A.P. 905(a)(4) ("If a notice of appeal is mistakenly filed in an appellate court, . . . the clerk shall immediately stamp it with the date of receipt and transmit it to the clerk of the court which entered the order appealed from, and upon payment of an additional filing fee the notice of appeal shall be deemed filed in the trial court on the date originally filed."). The trial court prothonotary received the Notice of Appeal from this Court on February 10, 2021.

[13] On May 5, 2021, we exited a *per curiam* order directing the parties to address the timeliness of Moody's appeal either in their principal briefs or in an appropriate motion. Appellees did not file a motion to quash on timeliness grounds. On August 16, 2021, this Court received from Moody a "Motion to Direct [DOC] Officials to Release Their Privileged Mail Log and to Remand This Matter to the Lower Court" (Remand Motion). In the Remand Motion, which Moody mailed on August 10, 2021, he requests that we direct the DOC to produce certain documents and remand the case to the trial court for an evidentiary hearing to determine whether he is entitled to *nunc pro tunc* relief. As discussed below, because we ultimately conclude that *nunc pro tunc* relief is appropriate and that the appeal is without merit, we will dismiss Moody's motion as moot.

2000) (citations omitted). However, in very limited circumstances, an appeal period may be extended to allow for an appeal *nunc pro tunc*. The law regarding *nunc pro tunc* appeals is well established. A *nunc pro tunc* appeal may be allowed where "extraordinary circumstances" involving fraud or a breakdown in the judicial process caused the delay in filing, or where non-negligent circumstances related to the appellant, his or her counsel, or a third party caused the delay. *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130, 1131 (Pa. 1996). A party seeking permission to file a *nunc pro tunc* appeal also must establish the following: (1) he filed the appeal shortly after learning of, and having an opportunity to address, the untimeliness; (2) the elapsed time is one of very short duration; and (3) the appellee will not suffer prejudice due to the delay. *H.D.*, 751 A.2d at 1219. Additionally,

> [n]othing jurisdictional prohibits either [this C]ourt [or the trial court] from entertaining an appeal *nunc pro tunc.* When, however, a *nunc pro tunc* appeal involves a factual determination, the better forum to entertain the appeal is the trial court so that an evidentiary hearing may be conducted. In contrast, if the parties can agree on the facts, there is no reason why we would not entertain the appeal.

*Weiman by Trahey v. City of Philadelphia,* 564 A.2d 557, 559 (Pa. Cmwlth. 1989) (italics provided) (citations omitted).

Appellees concede that Moody did not receive the trial court's December 10, 2020 order until after the appeal period had expired. In their brief, Appellees acknowledge that, "[a]ccording to [DOC] records, Moody was transferred from [SCI-Dallas] to [SCI-Camp Hill] five days after the trial court issued its final order. And it appears the order from the trial court was received by [SCI-Dallas] on the day of Moody's transfer, was forwarded to his new location at [SCI-Camp Hill], and was delivered to Moody in late January." (Appellees' Br. at 14-15.) Although these facts are not substantiated by record evidence, they match the version of events that Moody

6

posits throughout his papers. And, although parties cannot by stipulation extend an appeal deadline and thereby confer subject matter jurisdiction on this Court by agreement, *see Greenberger v. Pennsylvania Insurance Department*, 39 A.3d 625, 629 n. 5 (Pa. Cmwlth. 2012), the parties may nevertheless agree on the material facts necessary to determine whether *nunc pro tunc* relief is appropriate. Because no facts material to that issue remain disputed here, we will consider it.

Although a mere allegation of a failure to receive notice will not itself justify *nunc pro tunc* relief, *see J.A. v. Department of Public Welfare*, 873 A.2d 782, 786 (Pa. Cmwlth. 2005), where the failure to receive notice is due to an intervening breakdown in operations or the negligence of a third party, *nunc pro tunc* relief may be appropriate. *See Brown v. Hill* (Pa. Cmwlth., No. 388 C.D. 2018, filed August 1, 2019), 2019 WL 3477139, at *4 (failure to send notice of an order constitutes a breakdown in court operations warranting *nunc pro tunc* relief, and failure to receive a notice also can warrant *nunc pro tunc* relief);[14] *Bradley v. Pennsylvania Board of Probation & Parole*, 529 A.2d 66, 68 (Pa. Cmwlth. 1987) (where an inmate's transfer is within the exclusive control of prison officials, if the untimeliness of the inmate's appeal was the result of negligence by the prison officials in failing to forward the notice of administrative relief denial, the inmate should be granted permission to appeal *nunc pro tunc*; prison officials are expected to know the whereabouts of prisoners in their custody.); *Moore v. Pennsylvania Board of Probation & Parole*, 503 A.2d 1099 (Pa. Cmwlth. 1986) (parolee's failure to receive a copy of the Parole Board's administrative appeal or review decision because Parole Board sent decision to the wrong address warranted *nunc pro tunc* relief).

---

[14] Unreported decisions of this Court may be cited for their persuasive value pursuant to section 414(a) of our Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Here, the parties agree that Moody did not receive notice of the trial court's December 10, 2020 order until sometime in late January 2021, after the 30-day appeal period had expired. It also is not disputed that Moody's failure to receive the notice was not due to his own negligence, but, rather, was caused by a delay in the forwarding of Moody's mail to SCI-Camp Hill.[15] In this scenario, where the failure to receive notice is not due to any negligence of the appellant and an intervening third party fails to timely deliver or forward the notice, we conclude that extraordinary circumstances exist to warrant *nunc pro tunc* relief.[16] We accordingly accept as timely filed Moody's Notice of Appeal and will consider the appeal on the merits.

### III.    ISSUES ON APPEAL

Moody presents three questions for our review, the first of which, regarding the availability of *nunc pro tunc* relief, we have addressed above. Moody's second and third issues challenge the trial court's (1) denial of Moody's Second Extension Motion, and (2) dismissal of Moody's Complaint.

---

[15] Moody filed a Notice of Address Change on January 4, 2021, which indicated that his service address had changed to SCI-Camp Hill. The Notice is dated December 20, 2020. (O.R. Doc. 30.)

[16] This case is distinguishable from the case relied upon by the trial court, *Puckett v. Department of Transportation*, *Bureau of Driver Licensing*, 804 A.2d 140 (Pa. Cmwlth. 2002). There, we concluded that "extraordinary circumstances" did not exist to warrant *nunc pro tunc* relief where the licensee's incarceration and subsequent failure to notify the Department of Transportation (PennDOT) of his change of address caused his untimely appeal. *Id.* at 143-44. Although we acknowledged that actions of third parties can render a timely appeal impossible and justify *nunc pro tunc* relief, we further cautioned that *nunc pro tunc* relief will be granted only when the litigant himself did not act in a negligent manner. *Id.* at 143. Because the licensee in *Puckett* failed to provide PennDOT with an updated address and "was not in any other way incapacitated from filing an appeal of his license suspension while serving out his sentence on the criminal charges," *nunc pro tunc* relief was not warranted. *Id.* at 144. Here, Moody's transfer from SCI-Dallas to SCI-Camp Hill was facilitated by the DOC, and there is no evidence that Moody was negligent in failing to notify the trial court of the change. He filed a change of address form on December 20, 2021, which was received by the prothonotary on January 4, 2021. (O.R. Doc. 30.)

8

# IV.   DISCUSSION

## A.   SECOND EXTENSION MOTION

In his second issue, Moody argues that the trial court abused its discretion in denying his Second Extension Motion.  We disagree.

Pennsylvania Rule of Civil Procedure 1026(a) requires that every pleading subsequent to the complaint be filed within 20 days after service of the preceding pleading.  Pa. R.Civ.P. 1026(a).  Regarding preliminary objections specifically, Pa. R.Civ.P. 1028(c)(1) provides that a party may file an amended pleading as a matter of course within 20 days of receipt of preliminary objections.  *See also* Pa. R.Civ.P. 1028(e) ("If the filing of an . . . amended pleading . . . is allowed . . . , it shall be filed within [20] days after notice of the order or within such other time as the court shall fix.").  Pa. R.Civ.P. 1033(a) provides that a party, either by filed consent of the adverse party or by leave of court, may at any time amend a pleading.  Rule 1003 also provides that the time for filing or serving pleadings may be waived by agreement of the parties, and the trial court may, on cause shown, extend or shorten the time for filing pleadings.  Pa. R.Civ.P. 1003.  *See also* Pa. R.Civ.P. 248 ("The time prescribed by any rule of civil procedure for the doing of any act may be extended or shortened by written agreement of the parties or by order of Court.").  These rules together provide very clear procedural options to litigants who must respond to preliminary objections: file an amended pleading within 20 days, obtain an extension of time by agreement of the adverse party, or obtain an extension of time by leave of court.

Moody filed his Complaint on July 21, 2020.  Two of the Appellees (Wenerowicz and Moore) filed preliminary objections, endorsed with a Notice to Plead, on October 6, 2020.  Rather than file an amended complaint as a matter of course within 20 days pursuant to Pa. R.Civ.P. 1028(c)(1), Moody instead filed his First

Extension Motion on October 27, 2020. The trial court granted the motion on November 9, 2020, giving Moody an additional 20 days, or until November 30, 2020, to file an amended complaint. Appellees Wenerowicz, Moore, and Malet filed new preliminary objections the same day, establishing a deadline for filing an amended complaint as a matter of course on November 30, 2020. Moody neither complied with the trial court's order nor with Rule 1028(c)(1). Instead, he filed his Second Extension Motion on December 3, 2020. The trial court denied the motion the day it was received by the prothonotary (December 9, 2020) and, the following day, sustained Appellees' preliminary objections and dismissed the Complaint.

A court will not be reversed for its refusal to waive noncompliance with its rules absent an "abuse of discretion" causing "manifest and palpable injury." *Gordon v. Board of Directors of West Side Area Vocational Technical School*, 347 A.2d 347, 351 (Pa. Cmwlth. 1975). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Belleville v. David Cutler Group*, 118 A.3d 1184, 1195 (Pa. Cmwlth. 2015) (quoting *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996)).

We discern no abuse of discretion in the trial court's decision to deny Moody's Second Extension Motion. Moody obtained, and then disregarded, one extension of time to file an amended complaint. He at no point otherwise responded to Appellees' Preliminary Objections. In his Second Extension Motion, Moody acknowledged the trial court's original deadline, but nevertheless indicated that "enhanced quarantine" protocols precluded him from timely filing an amended complaint. We do not see why Moody was able to file his Second Extension Motion

10

but could not timely file an amended complaint within the time periods established by the Rules of Civil Procedure and the trial court's order. We simply cannot conclude that the trial court's ruling was manifestly unreasonable or the result of partiality, prejudice, bias or ill-will. On that basis, we affirm the trial court's denial of Moody's Second Extension Motion.[17]

### B. PRELIMINARY OBJECTIONS[18]

### 1. Moody's Underlying Criminal Case

Because Moody's entire case rests upon the impact that Appellees' alleged confiscation of legal mail had on Moody's ability to challenge his criminal sentence in PCRA petitions, we first review at some length the procedural history of Moody's underlying criminal case. The Pennsylvania Superior Court summarized it as follows in disposing of Moody's second PCRA petition:

> In 2006, when Moody was eighteen years and nine months old, he shot and killed Israel Rivera. A jury found Moody guilty of first-degree murder and related offenses, and the trial court sentenced him to a mandatory prison sentence of life without parole for murder and concurrent sentences for the other crimes. [The Superior C]ourt affirmed Moody's convictions, and our Supreme Court denied allowance of appeal on November 14, 2011. Moody timely filed a first

---

[17] Moody's filing his Amended Complaint does not change our conclusion. As of December 3, 2020, the 20-day periods in both Rule 1028(c)(1) and the trial court's order had expired. Moody had not obtained an extension by agreement from Appellees, and the trial court denied his extension motion on December 9, 2020. Accordingly, the Amended Complaint was untimely filed and has no impact on the disposition of Appellees' Preliminary Objections.

[18] This Court's review of an order sustaining preliminary objections is limited to determining whether the trial court abused its discretion or committed an error of law. *Factor v. Goode*, 612 A.2d 591, 592-93 (Pa. Cmwlth. 1992). In ruling on preliminary objections in the nature of a demurrer, the trial court must accept as true all well-pled facts and inferences that may be reasonably deduced therefrom. *Id.* at 593. The trial court should sustain a demurrer only in cases that are clear and free from doubt. *Id.*

11

PCRA petition in 2012, and the [PCRA] court appointed counsel ("PCRA counsel"), who filed a no-merit letter and a petition to withdraw from representation. Lengthy proceedings ensued, during which Moody filed *pro se* responses to counsel's no-merit letter and sought leave to file amended petitions, and asserted PCRA counsel's ineffectiveness for filing a no-merit letter. The PCRA court issued a [Pa.R.Crim.P. 907] notice, and Moody filed a *pro se* response again seeking leave to amend his petition and, in relevant part, asserting a new claim that the mandatory imposition of a life without parole sentence was unconstitutional because *Miller v. Alabama*, 567 U.S. 460 (2012), should be extended to offenders over the age of eighteen. The PCRA court ordered PCRA counsel to respond to Moody's *pro se* filings, and PCRA counsel filed a supplemental no-merit letter. In June 2018, the PCRA court denied relief without a hearing and permitted PCRA counsel to withdraw. Moody took a *pro se* appeal, and this Court affirmed the PCRA court's denial of Moody's first PCRA petition. Our Supreme Court denied allowance of appeal on March 16, 2020.

Moody filed the instant *pro se* PCRA petition, his second, in March 2021, wherein he asserted that the mandatory imposition of his life without parole sentence was unconstitutional. Moody acknowledged that *Miller* did not apply to offenders over eighteen years of age and maintained that he was not attempting to "extend" *Miller*. Rather, Moody claimed that he obtained new information that individuals over eighteen years old have similar behaviors, cognitive levels, and brain functions as those under eighteen years old. Those facts, he noted, had been discussed by or presented to other courts in *Cruz v. United States*, [D. Conn., No. 11-CV-787 (JCH), filed Mar. 29, 2018, *vacated and remanded*, 826 Fed. App'x 49 (2d Cir. 2020), 2018 WL 1541898 (*Cruz*)], and *People v. Antolin Garcia-Torres*, [Ca. Super. Ct., No. 213515, filed ___ , 2017 (*Garcia-Torres*)]. He also alleged that prison officials had interfered with the timely presentation of his constitutional claim by confiscating his mail containing documents related to *Cruz* and *Garcia-Torres*

12

and refusing him access to his mail before the PCRA court denied relief on his first PCRA petition.

In sum, Moody asserted that he discovered more recent scientific studies to challenge the categorical distinction between individuals, like himself, who were just over eighteen years old at the time of their offense and those who were under eighteen years of age. Moody concluded that he properly alleged newly discovered facts and governmental interference so that the PCRA court had jurisdiction to consider his claims that his sentence constituted a cruel and unusual punishment and denied him equal protection.

The PCRA court . . . dismissed the petition on October 21, 2021. Moody timely appealed.

*Commonwealth v. Moody* (Pa. Super., 2485 EDA 2021, filed February 27, 2023), slip op. at 1-5, 2023 WL 2232644 at *1-*3 (internal citations and footnotes omitted). Although Moody acknowledged that his second PCRA petition was untimely, he nevertheless contended that he alleged sufficient "newly discovered facts" about brain functioning and "governmental interference" by the DOC to bring his petition within two of the timeliness exceptions found at 42 Pa. C.S. § 9545(b)(1). *Id.*, slip op. at 10, 2023 WL 2232644 at *4.

The Superior Court rejected Moody's arguments and concluded that the petition was untimely. In doing so, it noted as follows:

Our review shows that Moody attempted to litigate a similar unconstitutional sentencing claim in relation to his first PCRA petition, although PCRA counsel at the time asserted that his attempt to extend *Miller* to offenders over eighteen years old was meritless. Although Moody references Dr. Bigler's and Dr. Steinberg's discussions of more recent studies, those studies constitute new sources of existing facts or scientific principles for the purpose of the PCRA time bar, not new facts or scientific principles.

13

Furthermore, Moody's arguments based on the governmental interference and the new facts exceptions in section 9545(b)(1)(i) and (ii) rely on his actual discovery of the materials in *Garcia-Torres* and *Cruz*, which prison officials delayed when refusing to forward him filings from other cases. However, Moody has not established that the prison's mail regulations were illegal or unconstitutional interferences by government officials. Critically, the record also lacks any indication that Moody alerted either the first PCRA court or this Court to these cases or his difficulties obtaining the materials despite being aware of the information and mailing issues as early as May 2018. Thus, we conclude that Moody failed to establish due diligence in obtaining the allegedly new information discussed in *Garcia-Torres* and *Cruz* or in overcoming the obstacles presented by the prison mailing system.

*Id.*, slip op. at 10-12, 2023 WL 2232644 at *5 (internal citations and footnotes omitted). The Superior Court accordingly affirmed the PCRA court's dismissal of Moody's second PCRA petition as untimely.

### 2. Analysis[19]

In his Complaint, Moody requested that the trial court (1) declare Appellees' conduct to be unlawful, (2) enjoin Appellees from further confiscating otherwise legally permissible inmate mail, (3) award nominal, compensatory, and/or punitive damages, and (4) award litigation costs. (Complaint, O.R. Doc. 1 at 9.) Appellees argued before the trial court and again argue in this Court that all of Moody's claims fail as a matter of law. We agree.

---

[19] Although Appellees filed two sets of preliminary objections, they are substantially identical and lodge the same challenges to Moody's Complaint. The trial court considered and ruled on them together in its December 10, 2020 order and subsequent opinion. *See* Trial Court Op. at 12-13. For purposes of Moody's appeal, we consider only the preliminary objections filed by Wenerowicz, Malet, and Moore on November 9, 2020. *See* O.R. Doc. 19.

14

All of Moody's claims relate in some fashion to the alleged confiscation of his legal mail and the grievance review process that followed. In Count I of his Complaint, Moody alleged that Appellees "individually, jointly, and collectively" violated his First and Fourteenth Amendment[20] rights by 1) confiscating his legal mail in retaliation against him, 2) establishing and continuing a general practice of confiscating prisoner mail, and 3) depriving him of access to the documents he needed to pursue his PCRA claims, which deprivation ultimately caused the dismissal of his PCRA petition. (Complaint, O.R. Doc. 1 ¶¶ 35-36.) In Count II, Moody alleged that Appellees "individually, jointly, and collectively" violated his Fourteenth Amendment due process rights by 1) not adhering to DOC policies applicable to the confiscation of mail, 2) not adhering to DOC policies applicable to the review of appeals regarding the confiscation of mail, and 3) establishing and acquiescing to a practice of confiscating permissible legal mail for no legitimate penological purpose. (*Id.* ¶ 38.) In Count III, Moody alleged that Appellees violated his Fourteenth Amendment substantive due process rights by confiscating his legal mail and conducting "perfunctory and sham reviews" of such confiscations. (*Id.* ¶ 40.) Finally, in Count IV, Moody contended that Appellees "maliciously abused the administrative process by misusing [DOC] policy to confiscate legally permissible information." (*Id.* ¶ 42.)

We first note that, to the extent that Moody contends that the alleged confiscation of his mail in any way precipitated the dismissal of his serial PCRA petitions, the above-quoted language from the Superior Court's decisions on those petitions belies any such notion. Both of Moody's PCRA petitions were dismissed because they were either without merit or untimely. Although the Superior Court acknowledged Moody's argument that he allegedly could not access certain documents

---

[20] U.S. Const. amend. XIV.

15

germane to his PCRA claims, in the end, the claims failed because they were not cognizable under then-existing Pennsylvania law. Thus, to the extent that Moody's Complaint is based on alleged harm to the success of his PCRA petitions, *see, e.g.*, Complaint, O.R. Doc. 1 ¶ 27, it fails as a matter of law.

Second, we find persuasive Appellees' preliminary argument that Moody failed to allege any specific conduct by them *individually* that could support any of the claims asserted in the Complaint, which accordingly must be dismissed in its entirety. The Pennsylvania Supreme Court has held that a public employee is not vicariously liable for the actions of subordinates simply because the subordinate is in the employee's chain of command. *DuBree v. Commonwealth*, 393 A.2d 293, 295-96 (Pa. 1978). In civil rights actions, a person's "liability cannot be predicated on the operation of [*respondeat superior*]," but instead must be based on personal involvement that "can be shown through allegations of personal direction or actual knowledge and acquiescence" in the alleged wrong. *Bush v. Veach*, 1 A.3d 981, 986 (Pa. Cmwlth. 2010). Such "allegations must be made with appropriate particularity." *Id.* A public employee's participation in reviewing grievances and grievance appeals does not constitute personal involvement. *Id.* If no personal involvement is averred, the public employee is immune from suit. *DuBree*, 393 A.2d at 296.

Moody nowhere in his Complaint alleges the personal involvement of any Appellee in confiscating his legal mail or developing an unconstitutional confiscation process. Rather, all of their individual involvement is alleged to have occurred after Moody filed a grievance. (Complaint, O.R. Doc. 1 ¶¶ 22, 24-28.) Moody clearly attempted to rely on *respondeat superior* to establish his claims, alleging, for example, that "each [Appellee] had the authority to either relinquish and/or direct [his or her] subordinates to relinquish the confiscated materials over to [Moody] once it was

16

brought to [his or her] attention that [he or she was] required to assist him" in the PCRA process. (*Id.* ¶ 34.) Without more, these allegations of Appellees' involvement in the grievance process, non-compliance with the DOC's grievance review policies, and general acquiescence are insufficient to support individual liability claims related to the alleged confiscation of Moody's legal mail. Thus, all claims asserted in the Complaint fail as a matter of law.[21]

## V. CONCLUSION

Because we conclude that Moody has failed to allege sufficient facts in his Complaint establishing Appellees' individual involvement in the acts of which he complains, the trial court appropriately dismissed the Complaint in its entirety. We accordingly affirm the trial court's order sustaining Appellees' Preliminary Objections. Given this disposition of the merits of Moody's appeal, we dismiss as moot his Remand Motion.[22]

_____

PATRICIA A. McCULLOUGH, Judge

---

[21] We note that the trial court did not expressly rely on these deficiencies to sustain the Preliminary Objections. *See* Trial Court Op. at 13-16. Nevertheless, Appellees objected to the Complaint on these grounds in their Preliminary Objections and supporting brief, *see* O.R. Docs. 9, 10, 19, and they again raise these issues on appeal. We may affirm the decision of a trial court if the result is correct on any ground, and it need not be the same ground upon which the trial court itself relied. *Kraiser v. Horsham Township*, 455 A.2d 782, 784 (Pa. Cmwlth. 1983).

[22] Given our disposition of Moody's appeal, we do not, because we need not, address Appellees' other Preliminary Objections to Moody's Complaint.

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Moody,                 :
             Appellant     :
                                :
         v.                 :    No. 376 C.D. 2021
                                :
Michael Wenerowicz, former Deputy    :
of the Department of Corrections     :
("D.O.C."); Keri Moore, Assistant     :
Chief Grievance Officer of the       :
D.O.C.; Lawrence Mahally, former    :
Superintendent of State             :
Correctional Institution Dallas      :
("SCI Dallas"); Giselle Malet,       :
Mailroom Supervisor of          :
S.C.I. Dallas                  :

## ***ORDER***

AND NOW, this 31st day of May, 2023, the December 10, 2020 order of the Court of Common Pleas of Luzerne County is hereby AFFIRMED. It further is Ordered that Appellant Brandon Moody's "Motion to Direct [Department of Corrections] Officials to Release Their Privileged Mail Log and to Remand This Matter to the Lower Court" is hereby DISMISSED as moot.

 

_____
PATRICIA A. McCULLOUGH, Judge