IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Friends of Marconi Plaza,        :
                      Appellant    :
                                   :
           v.                        : No. 378 C.D. 2024
                                   : Submitted:  February 3, 2026
James Kenney, Robert Thomas,    :
Kimberly Washington, Daniel      :
McCoubrey, Emily Cooperman,    :
Jonathan E. Farnham, Kenneth    :
Woodson, Ralph S. Pinkus, and    :
Stephen Petit                      :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                        FILED:  March 5, 2026


Friends of Marconi Plaza (Friends) appeals the March 19, 2024 order of the
Court of Common Pleas of Philadelphia County (trial court) sustaining the Mayor
of the City of Philadelphia, James Kenney's (the Mayor), and members of the
Philadelphia Historical Commission (Historical Commission), Robert Thomas's,
Kimberly Washington's, Daniel McCoubrey's, Emily Cooperman's, Jonathan E.
Farnham's, and members of the Philadelphia Board of License & Inspection Review
(Board), Kenneth Woodson's, Ralph S. Pinkus's, and Stephen Petit's (collectively,

the City) preliminary objections and dismissing Friends' complaint with prejudice. After review, we affirm.

## BACKGROUND

This lawsuit is relating to other litigation and administrative proceedings stemming from the Mayor's 2020 directive to his administration, particularly, the Office of Arts, Culture, and the Creative Economy (Office of Arts), to request permission from the Historical Commission to remove the Christopher Columbus statue from Marconi Plaza in South Philadelphia. *In re Friends of Marconi Plaza*, 287 A.3d 965 (Pa. Cmwlth. 2022) ("*Marconi I*"). The statue became a focal point for clashes between opposing groups following the death of George Floyd in Minneapolis, Minnesota, during a time of "civil unrest." *Id.* at 968.

In *Marconi I*, the Historical Commission approved the removal, and the Board affirmed that decision. Trial Court Opinion (Trial Ct. Op.), 11/5/24, at 1-2. On appeal, the trial court reversed, and this Court then affirmed that reversal, holding the Office of Arts' application to the Historical Commission to remove the Columbus statue after an abbreviated 28-day public comment period violated the required 90-day public comment period.[1] *Marconi I*, 287 A.3d at 969-70, 981. As such, we deemed the application a nullity; however, we noted the same could be

---

[1] The City's Office of Arts is governed by a 1998 "Policy on the Donation, Placement and Removal of Public Art" entitled "Managing Director's Directive 67" (Directive 67), which states the following, in pertinent part, regarding the removal of public art:

In the case of a proposal to remove due to public protest, an opportunity to solicit and obtain public input shall be provided by the [Office of Arts] or its successor agency prior to further action on the proposal. A period of no less than ninety (90) days shall be provided for public input on the matter.

*Marconi I*, 287 A.3d at 969, *quoting* Directive 67, § B.III.2 (emphasis omitted).

remedied by "starting the public input period over and waiting until it is complete before the Office of Arts takes any further action with respect to the removal of the Columbus statue from Marconi Plaza, such as the submission of a new application to the Historical Commission." *Id.* at 981. Overall, we concluded that "[t]he Historical Commission lacked jurisdiction to receive the application submitted prior to completion of the 90-day period of public input, let alone to act upon that application." *Id.*

Friends commenced this litigation on May 25, 2023. Trial Ct. Op. at 2. The complaint named the Mayor[2] and certain members of the Historical Commission and the Board as defendants, alleging they "civilly conspired to and did commit an abuse of process and violation of [a]rticle I [s]ection 27 of the Pennsylvania Constitution by illegally, intentionally, and maliciously conducting proceedings and voting to remove the statue." *Id.* The complaint also raised a claim pursuant to Section 512 of the Historic Preservation Act, 37 Pa.C.S. § 512. *See* Reproduced Record (R.R.) at 31a-32a.

The City filed preliminary objections sounding in demurrer, raising quasi-judicial immunity, high public official immunity, legal insufficiency, and statute of limitations, as well as preliminary objections based upon lack of standing, failure to exhaust a statutory remedy, and pendency of a prior action. R.R. at 459a. Friends filed preliminary objections to the City's preliminary objections, exclusively challenging the City's raising a statute of limitations defense in preliminary objections instead of in a new matter. R.R. at 1025a. On March 19, 2024, the trial court overruled Friends' preliminary objections, sustained the City's preliminary objections and dismissed Friends' complaint with prejudice. R.R. at 2768a, 2767a.

---

[2] Mayor Kenney's term ended on January 1, 2024. City's Br. at 8, n.1.

Specifically, the trial court held quasi-judicial immunity protected the Historical Commission and Board members from Friends' claims. Trial Ct. Op. at 4. The trial court deemed their functions of "[p]roviding notice, admitting or excluding evidence, and rendering a decision" akin to the discretionary "decision-making authority" endowed to judges in the judicial process. *Id.* at 5. The trial court found Friends' allegations of illegal, intentional, and/or malicious conduct regarding the hearing and decision-making process insufficient to waive quasi-judicial immunity. *Id.* As to the Mayor, the trial court determined he qualified as a "high public official," entitled to absolute immunity from Friends' claims under Pennsylvania common law. *Id.* at 7. The trial court found the Mayor's alleged acts or omissions relative to requesting removal of the statue fell within the scope of his mayoral authority and official duties. *Id.* The trial court held Friends' allegations of illegal, intentional, and/or malicious conduct insufficient to waive high public immunity. *Id.* at 7-8. Finally, the trial court adjudicated all of Friends' claims barred by applicable statutes of limitations. *Id.* at 8-9.

Friends then filed this appeal.

On appeal, Friends raises three issues for this Court's review.[3] First, Friends contends the trial court erred in applying quasi-judicial immunity where the City

---

[3] Additionally, Friends purports to challenge the trial court's premature consideration of immunity during preliminary objections and failure to "accept as true all well-pleaded facts" of the complaint. *See* Friends' Br. at 9, ¶ 3, 19. However, to preserve the issue, Friends should have raised an immunity objection in its preliminary objections to the City's preliminary objections. *See N.W.M. Through J.M. v. Langenbach*, 316 A.3d 7, 13, n.21 (Pa. 2024) (plaintiff must object to an affirmative defense, such as immunity, raised in an improper manner by preliminary objection or plaintiff waives the objection); *Chasan v. Platt*, 244 A.3d 73, 81 (Pa. Cmwlth. 2020) (when plaintiff responds to preliminary objections instead of challenging the procedure by filing its own preliminary objections, plaintiff waives any challenge to the form of pleading the defense). Generally, when not objected to in preliminary objections, courts accept "that immunity is a defense that may be raised by preliminary objection 'when to delay a ruling thereon would serve **(Footnote continued on next page…)**

4

acted willfully, in bad faith, and knowingly beyond its lawful authority. Second, Friends asserts the trial court erred in sustaining the City's preliminary objections despite its well-pleaded allegations that the City knowingly violated the law and intentionally denied Friends due process. Finally, Friends argues the trial court should not have addressed the City's statute of limitations defense at the preliminary objections stage, and moreover, should not have applied the same to bar Friends' claims.

In response, the City contends quasi-judicial immunity and high public official immunity provide leaders and adjudicatory bodies entrusted with making difficult decisions absolute immunity from suit. The City asserts Friends' allegations of "bad faith" and acting contrary to the law cannot defeat absolute immunity protections.

## DISCUSSION

This Court's review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to determining whether the trial court abused its discretion or committed an error of law. *Chasan*, 244 A.3d at 80, n.5. "Preliminary objections in the nature of a demurrer admi[t] all well-pleaded, material and relevant facts in the complaint." *Unger v. Hampton Twp.*, 263 A.2d 385, 387 (Pa. 1970). The trial court need not "accept as true legal conclusions, unwarranted factual inferences, argumentative allegations, or expressions of opinion." *Chasan*, 244 A.3d at 80 (citation omitted). The trial court should only sustain a demurrer where the pleading is "facially devoid of merit." *Id.* (quotation omitted).

___

no purpose,'" or "where the defense is clearly applicable on the face of the complaint." *Chasan*, 244 A.3d at 81 (quotations and emphasis omitted). Because the complaint names the Mayor and members of the Historical Commission and Board members as defendants, the judicial immunity defense is evident on the face of the complaint. Thus, by not raising it in preliminary objections, Friends waived this issue.

First, we address Friends' contention that the trial court erred by dismissing its claims against the Historical Commission and Board members based on absolute quasi-judicial immunity. Judicial immunity protects the public's interest in having judges "who [are] at liberty to exercise their independent judgment about the merits of a case without fear of being mulcted for damages should an unsatisfied litigant be able to convince another tribunal that the judge acted not only mistakenly but with malice and corruption." *See Chasan,* 244 A.3d at 82, n.7. Pennsylvania courts have long acknowledged that quasi-judicial immunity protects administrative adjudicatory officials from lawsuits by disgruntled parties to agency proceedings. *Petition of Dwyer*, 406 A.2d 1355, 1360 (Pa. 1979). Like judicial immunity, quasi-judicial immunity "is necessary to ensure that agency adjudicatory decisions will be rendered independently, free from external pressures, harassment or intimidation." *Id.* at 1359.

Judicial and quasi-judicial officials "are **absolutely immune** from liability for damages when performing judicial acts, **even if their actions are in error or performed with malice**, provided there is not clear absence of all jurisdiction over the subject matter and person." *Logan v. Lillie*, 728 A.2d 995, 998 (Pa. Cmwlth. 1999) (citation omitted) (emphasis added). Judicial immunity extends not only to immunity from damages, but also to "immunity from suit." *Chasan,* 244 A.3d at 82 (quotation omitted).

Additionally, as observed by the trial court, under well-established common law, "high public officials" have long enjoyed "**absolute immunity** from all civil lawsuits for damages arising from actions they took within the scope of their authority and in the course of their official duties **even actions taken and motivated by malice, personal or political reasons, or no reason at all**." Trial Ct. Op. at 5

6

(citing *Doe v. Franklin Cnty.*, 174 A.3d 593, 596, 603-05, n.10 (Pa. 2017); *Durham v. McElynn*, 772 A.2d 68, 69-70 (Pa. 2001); *Feldman v. Hoffman*, 107 A.3d 821, 826-27 (Pa. Cmwlth. 2014); *Azar v. Ferrari*, 898 A.2d 55, 59, 61 (Pa. Cmwlth. 2006); *Schuman's Vill. Square Drugs, Inc. v. Stern*, 322 A.2d 431, 432 (Pa. Cmwlth. 1974)) (emphasis added). The Supreme Court has specifically deemed a mayor a high public official entitled to absolute immunity. *Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996); *see also Factor v. Goode*, 612 A.2d 591 (Pa. Cmwlth. 1992) (Mayor of the City of Philadelphia is a high public official).

Friends cites no authority for the assertion that bad faith vitiates judicial and quasi-judicial immunity, or high public official immunity. Friends argues that quasi-judicial immunity only protects public officials acting within their jurisdiction and in good faith and does not shield knowingly illegal conduct. Friends asserts that Section 8550 of the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. § 8550, specifically abrogates this immunity where a defendant engages in "a crime, actual fraud, actual malice or willful misconduct[.]" Friends' Br. at 17.

Friends relies upon official immunity in the Tort Claims Act, which has an exception for willful misconduct. *See* 42 Pa.C.S. § 8550. However, official immunity differs from quasi-judicial immunity as the former provides only **conditional**, rather than absolute, immunity to protect public employees from suits arising out of the performance of official duties. *See DuBree v. Com.*, 393 A.2d 293, 296 (Pa. 1978) (emphasis added); *see also N.W.M.*, 316 A.3d at 18, n.65 (noting distinction between official immunity and quasi-judicial immunity). Additionally, our Supreme Court has expressly rejected Friends' argument, particularly in the context of high public official immunity. *Lindner*, 677 A.2d at 1196-98 (holding Section 8550 was not intended to impose a "willful misconduct" exception to high

7

public official immunity). Thus, we discern no error in the trial court's application of these immunity doctrines.

Second, Friends asserts the trial court erred in sustaining preliminary objections despite well-pleaded allegations the City knowingly violated the law and intentionally denied Friends due process. Friends does not dispute the City performed judicial acts; rather, Friends disputes whether the City acted within its jurisdiction. Specifically, Friends relies upon the holding in *Marconi I* that the deliberate violation of Directive 67 rendered the application a "nullity," depriving the Historical Commission of jurisdiction to act. Friends' Br. at 17, 20. Friends emphasizes the illegality of the City's acting on the application, in knowing contravention of the 90-day requirement. *Id.* at 17-18. Additionally, Friends contends that immunity should not apply given the "procedurally flawed hearings" conducted by the Historical Commission and the Board. *Id.* at 20-21.

"[J]udicial immunity requires a two-part analysis: first, whether the judge has performed a judicial act; and second, whether the judge has some jurisdiction over the subject matter before [him]." *Chasan,* 244 A.3d at 81 (quotation and emphasis omitted). For an immunity analysis, the scope of a judge's jurisdiction must be broadly construed, so that liability attaches in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quotation omitted).

Here, Friends' jurisdictional contention exaggerates this Court's holding in *Marconi I.* At no time did this Court question the authority of the Historical Commission or the Board to hear matters pertaining to the statue. To the contrary, we expressly opined that the City could reapply to the Historical Commission upon expiration of the 90-day period for public comment. *Marconi I*, 287 A.3d at 981. Thus, because the Board and the Historical Commission had subject matter

8

jurisdiction to review the City's application, the trial court correctly applied quasi-judicial immunity. *See Chasan,* 244 A.3d at 81. Moreover, because the Mayor acted within the scope of his authority and in the course of his official duties, the trial court properly applied high public official immunity. *See Factor*, 612 A.2d at 592. Overall, the trial court properly determined Friends' allegations of illegality insufficient to waive immunity.

Accordingly, we need not address Friends' remaining issue on appeal.

## CONCLUSION

For the reasons set forth above, we affirm the trial court's March 19, 2024 order.

_____
STACY WALLACE, Judge

Judge Dumas did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Friends of Marconi Plaza, : 
                    Appellant : 
                         : 
          v. : No. 378 C.D. 2024
                         : 
James Kenney, Robert Thomas, : 
Kimberly Washington, Daniel : 
McCoubrey, Emily Cooperman, : 
Jonathan E. Farnham, Kenneth : 
Woodson, Ralph S. Pinkus, and : 
Stephen Petit : 

## **O R D E R**

**AND NOW**, this 5th day of March 2026, the March 19, 2024 order of the Court of Common Pleas of Philadelphia County is **AFFIRMED**.

_____
STACY WALLACE, Judge